### ERIC RUMBIN *v.* EDUARDO BAEZ
### (AC 18105)

Foti, Landau, and Sullivan, Js.

Argued January 20—officially released March 30, 1999

*Norman A. Pattis*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*R. J. Weber III*, with whom, on the brief, was *Madonna A. Sacco*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The plaintiff, Eric Rumbin, appeals the trial court's judgment rendered in favor of the defendant after that court granted the defendant's motion to strike all counts of the plaintiff's complaint. The plaintiff claims that the trial court improperly found that the complaint failed to state a claim for which relief may be granted (1) under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (2) for breach of contract and (3) for tortious interference.[1] We affirm the judgment of the trial court.

In his substitute complaint, the plaintiff alleges the following relevant facts. In 1988, the plaintiff was a client of the bureau of rehabilitation services (bureau), a division of the state's department of social services. The bureau referred the plaintiff to the defendant for a psychological evaluation, which the defendant conducted in June and July of 1988. The defendant is a licensed clinical psychologist with a practice in New

---

[1] The trial court also struck the negligence count of the substitute complaint, but the plaintiff has not challenged that decision.

Haven. On the basis of the results of psychological and neuropsychological tests, the defendant diagnosed the plaintiff as suffering from dependent personality disorder.

The plaintiff further alleges that the defendant was not qualified or competent to perform such tests but falsely represented himself as such for personal pecuniary gain. He claims that, relying on the defendant's erroneous report, the bureau determined that the plaintiff should be denied certain services that he was seeking, including support for graduate or professional school, because his dependency largely precluded employability and would only be reinforced by the provision of further services.

"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the defendants' motions is plenary. . . . [W]e take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted; internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 307–308, 709 A.2d 1089 (1998).

I

The plaintiff first claims that the trial court improperly ruled that he failed to state a claim for which relief may be granted for a violation of CUTPA. We disagree.

"Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as

only the entrepreneurial aspects of the practice of law are covered by CUTPA." *Haynes* v. *Yale-New Haven Hospital,* 243 Conn. 17, 34, 699 A.2d 964 (1997); see also *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 717 A.2d 724 (1998) (professional malpractice not covered by CUTPA). "[T]he touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation." *Haynes* v. *Yale-New Haven Hospital,* supra, 38.

*Haynes* is controlling precedent in this case. The plaintiff in *Haynes* alleged that Yale-New Haven Hospital was certified and held itself out as a major trauma center despite the fact that the emergency department was inadequately staffed and the existing staff was inadequately trained for that facility to be a major trauma center. Moreover, Yale-New Haven Hospital's emergency room procedures fell short of major trauma center standards. The Supreme Court concluded that the hospital's representation to the public that it met the standards of competency of a major trauma center and its failure to meet those standards constituted grounds for a malpractice claim but did not rise to the level of a CUTPA claim.

The defendant in this case was a licensed clinical psychologist, maintained a clinical psychology practice and held himself out to the public as qualified to practice clinical psychology. The defendant's failure to meet the standards of that profession would constitute a malpractice claim. The mere fact that the defendant received compensation for services that he was not competent to perform is not different from Yale-New

Haven Hospital's receiving compensation for services that it could not deliver. Therefore, the trial court properly struck the CUTPA count of the substitute complaint.

## II

The plaintiff claims that the trial court improperly found that he failed to state a claim for which relief may be granted for breach of contract. We disagree.

An allegation of medical malpractice does not generally give rise to a breach of contract claim. See *Barnes* v. *Schlein*, 192 Conn. 732, 735–36, 473 A.2d 1221 (1984); *Camposano* v. *Claiborn*, 2 Conn. Cir. Ct. 135, 137, 196 A.2d 129 (1963). A breach of contract claim is a distinct claim that may arise from the same facts and may exist where the physician and patient contract for a specific result. *Camposano* v. *Claiborn*, supra, 137.

In *DiMaggio* v. *Makover*, 13 Conn. App. 321, 324, 536 A.2d 595 (1988), the plaintiff asserted a breach of contract claim against a psychiatrist who incompetently conducted a psychological evaluation of her at her employer's request and whose erroneous report resulted in her termination. Because we concluded that her claim sounded in malpractice and failed to disclose any breach of a contractual duty owed to her by the defendant, we affirmed the trial court's summary judgment against her.

The factual scenario here is similar to that in *DiMaggio*. The defendant performed psychological tests on the plaintiff at the behest of the bureau despite his alleged incompetence to do so. As a result of the defendant's report, the plaintiff did not receive various benefits and services from the bureau. The plaintiff's substitute complaint contains no allegation of a breach of a contractual duty owed to him. There is no allegation that the parties contracted for a specific result. The

claim is essentially a medical malpractice claim clothed in the language of contract. Therefore, we conclude that the trial court properly found that the plaintiff failed to state a breach of contract claim.

### III

The plaintiff finally claims that the trial court improperly found that he failed to state a tortious interference claim for which relief can be granted.

"This court has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Citation omitted; internal quotation marks omitted.) *Solomon* v. *Aberman*, 196 Conn. 359, 364, 493 A.2d 193 (1985).

The facts in the substitute complaint do not support a claim for tortious interference with business expectancies. The beneficial relationship element is missing or is, at best, highly speculative. Nowhere is there an allegation that the defendant knew of that relationship or that he intended to interfere with it. Moreover, the bureau's denial of funds that the plaintiff was seeking for medical, graduate or professional school does not create any actual loss. Nowhere is it alleged that the defendant had been accepted at such a school or had more than speculative plans to pursue that course. We conclude that the trial court properly struck the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other judges concurred.