[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE FILED BY DEFENDANT NEEDHAM AND ASSOCIATES, INC. (#166)
The defendant, Needham and Associates, Inc., has filed a motion to strike four counts of the plaintiff's Second Amended Complaint dated November 12, 1999 in this building construction contract dispute. The defendant seeks to strike Count 15, negligence and Count 19, recklessness on the basis that the economic loss doctrine prevents the owner in a building construction contract dispute from bringing tort claims. In addition, the defendant seeks to strike Count 26, Connecticut Unfair Trade Practice Act (CUTPA) by unfair acts, and Count 27, CUTPA by deceptive acts, on the basis that this court has already decided these issues in an oral decision dated May 12, 1999. The novel issue to be decided on this motion is whether the profession of engineering is subject to the entrepreneurial rule of CUTPA.
 PROCEDURAL FACTS
The plaintiff, Worldwide Preservation Services, L.L.C., as the owner of real property in Stamford, Connecticut, commenced this lawsuit suing multiple defendants in nineteen counts. The plaintiff claims that it entered into an agreement on January 17, 1997 with the defendant, The IVth Shea, L.L.C., to engineer, manufacture and deliver to a specified site, pre-engineered and pre-manufactured steel components of a building pursuant to design and specifications prepared by plaintiff's architect. The architect is not a party to this litigation. The complaint further alleges that The IVth Shea entered into this contract individually and as agent for Varco-Pruden Buildings, Inc. (VP), the actual performer of the contract. Plaintiff further states that VP then entered into a contract with Needham and Associates, Inc., to design and engineer the steel components to be used to manufacture the building. VP also entered into a contract with PKM Steel Service, Inc. to manufacture the steel components CT Page 1879 for the building. The plaintiff alleges that the steel was manufactured incorrectly, and/or designed incorrectly. None of the defendants had the obligation of constructing the building. The plaintiff alleges that it was the intended beneficiary of both VP/Needham and VP/PKM contracts.
Seven of the original nineteen counts sounded in contract or quasi contract: breach of contract, breach of personal guarantee, breach of duty of good faith and fair dealing, breach of express warranty, breach of warranty of workmanlike condition, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and unjust enrichment. The remaining eleven counts sounded in tort: fraud, intentional misrepresentation, reckless misrepresentation, negligent misrepresentation, innocent misrepresentation, duress, negligence, tortious interference with business relations, negligent interference with business relations, recklessness, and violation of CUTPA. Two separate motions to strike were filed by two of the defendants and a majority of those requests were granted by the court in an oral decision on May 12, 1999. No request for a written decision was filed by the parties and the plaintiff pled over with the Second Amended Complaint dated November 12, 1999.
 DISCUSSION OF LAW
This court has applied well known principles in deciding this Motion to Strike. Peter Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270-71 (1998); Pitts v. Carabillo, Superior Court, judicial district of Danbury, Docket No. CV 99-0334727 S (May 22, 2000, Carroll, J.) (2000 Ct. Sup. 6048). This court does not need to restate those principles.
The issue of whether tort claims in this contract action should be stricken based on the economic loss doctrine has been decided by this court in its oral decision of May 12, 1999. That decision was not signed nor published. In that oral decision, this court found that the economic loss doctrine prevented the prosecution of tort claims in this building-type contract case. The plaintiff pled over. The Second Amended Complaint was followed by a Motion to Strike dated January 10, 2000 filed by VP, another defendant. On even date herewith, this court issued a written decision on VP's Motion to Strike, adopting the economic loss doctrine. Four tort claims against VP were stricken. This court refers to that decision for the application of the economic loss doctrine. Therefore, this court strikes Count 15 in negligence and Count 19 in recklessness based on the economic loss doctrine.
Needham moves to strike the CUTPA counts since the May 12, 1999 CT Page 1880 decision is the law of the case, thus preventing the revisiting of those issues. Breen v. Phelps, 186 Conn. 86, 99 (1982); McCarthy v. McCarthy,55 Conn. App. 326, 332-34 (1999). Needham also argues that the entrepreneurial rule in CUTPA should be limited to attorneys and health care providers and should not be applicable to other professions, i.e., engineers.
 CONCLUSION
Count 26 alleges a violation of CUTPA by unfair acts. Similar allegations were stricken on May 12, 1999. The plaintiff has now amended its complaint by a Second Amended Complaint dated November 12, 1999. The plaintiff argues that the amendments have added sufficient allegations to the CUTPA counts to withstand Needham's Motion to Strike.
The Second Amended Complaint restates the first 53 paragraphs of the general allegations of the complaint. These 53 paragraphs form the basis of the contract-type claims. Four new paragraphs were added by the plaintiff in the CUTPA count. Count 26 states: "Paragraph 55; "On or about July 21, 1997, IVth Shea, individually and on behalf of Varco and Needham, submitted a change order (`Change Order #6'), representing $37,675 purportedly owed by Worldwide for "additional engineering fees.' Worldwide paid Change Order #6 — in addition to other change orders — in or about August 1997." Paragraph 56 states: "Upon information and belief, the work represented by Change Order #6 included, in whole or in part work that was to be performed by IVth Shea, Varco and Needham pursuant to Purchase Order and/or the Varco/Needham Contract, and was submitted to Worldwide in order to extract additional, improper fees from Worldwide for the benefit of IVth Shea, Varco and Needham." Paragraph 59 states that the unfair acts include: "submitting and accepting, indirectly through IVth Shea and Varco, payment for Change Order #6 for additional engineering fees which, upon information and belief, were improper." Paragraph 60 states: "The foregoing actions of Needham are unethical, unscrupulous and offensive to public policy because, among other things, these actions, individually and collectively, illustrate a pattern and practice by which Needham extracted fees from Worldwide to which Needham was not entitled."
CUTPA cannot be pled by merely restating contract-type allegations.Seiling v. D'Esopo Co., Superior Court, judicial district of New Britain, Docket No. CV 96-0561422 (November 22, 1996, Wagner, J.T.R.) (18 Conn.L.Rptr. 271) (1996 Ct. Sup. 9583). The contract claims in this case involve more than one million dollars. Needham was the engineer in charge. Needham apparently billed $37,675 for extras, CT Page 1881 which according to the complaint were not due. In addition, the breach of contract count alleges in paragraph 33: "the Change Orders and the Purchase Price did in fact contain numerous mischarges and overcharges including, without limitation . . . f. $37,675 for engineering services to which IVth Shea and Varco were not entitled." Therefore, it appears that the defendant Needham is being faced with a CUTPA count alleging unfair acts by reason of its overcharge on a contract, a contract which forms one of the allegations in the breach of contract count. This court is of the opinion that these CUTPA allegations in Count 26 are nothing more than the restatement of a contract case.
Count 27 alleges a violation of CUTPA by deceptive acts, against Needham. Four changes were made to the original CUTPA count after this court's granting of the motion to strike on May 12 1999. The additional language of Count 27 is identical to the new allegations in paragraphs 55, 56, 59 and 60 of Count 26. These new allegations are nothing more than the reallegation of a contract claim, which is insufficient to support CUTPA.
Needham and Associates, Inc., as a design engineer, has further argued that the CUTPA counts must be stricken for failure to allege an entrepreneurial violation. "We conclude that professional negligence — that is, malpractice — does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA." Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34 (1997).Haynes did not hold that health care providers are exempt from all CUTPA claims. It held that professional malpractice claims are exempt from CUTPA. The entrepreneurial or commercial aspects of the profession are covered by CUTPA. This rule covers attorneys. Beverly Hills Concepts,Inc. v. Schatz and Schatz, 247 Conn. 48, 79 (1998). "We have stated, instead, that, only the entrepreneurial aspects of the practice of law are covered by CUTPA." Id. 79. "We, therefore, take this opportunity to reaffirm our prior holding that professional malpractice does not give rise to a cause of action that professional negligence — that is, malpractice — does not fall under CUTPA." Id.
In this case, Needham, as engineers were providing professional services. A CUTPA violation is being claimed against it for various deficiencies. Neither Haynes nor Beverly Hills Concepts state that the exemption from CUTPA for professional malpractice is limited to health care providers and attorneys and does not extend to other professions such as architects or engineers. This court is influenced by the same CT Page 1882 broad phrase used by the Supreme Court in both Haynes and Beverly HillsConcepts, "We conclude that professional negligence — that is, malpractice — does not fall under CUTPA." Beverly Hill Concepts
went further and concluded broadly "professional malpractice does not give rise to a cause of action under CUTPA." Beverly Hills Concepts,Inc. v. Schatz and Schatz, supra, 247 Conn. 79. Both Haynes and BeverlyHills Concepts were unanimous decisions. CUTPA by statute, applies to any "trade or commerce." General Statutes § 42-110b(a). This court cannot divine any reason from these two cases and the statutory definition why professional malpractice should be limited just to health care providers and attorneys, merely by the fact that the Supreme Court has only had the opportunity to address those two professions. The broad language of the two decisions is identical. The birth of this rule is found in a concurring opinion in 1993 which contains no such limitation. "CUTPA covers only the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyers — that is, the representation of a client in a legal capacity — should be excluded for public policy reasons." Jackson v. R.G. Whipple, Inc., 225 Conn. 705,731 (1993) (Berdon, J., concurring).
A number of trial courts have refused to apply the entrepreneurial rule to architects. Darien Asphalt Paving, Inc. v. Town of Newtown, Superior Court, judicial district of New Britain, Docket No. CV98-04878 (December 7, 1998, Nadeau, J.) (1998 Ct. Sup. 14034) (The architect "advances no law or argument as to why architects should be treated in the same manner as healthcare providers and attorneys. This court declines to make a groundless expansion of the Supreme Court rule in Haynes to other professional groups." No further reasoning was contained in Darien Asphalt
other than the citation to Haynes and Beverly Hills Concepts); Franco v.Mediplex Construction, Superior Court, judicial district of New Haven at New Haven, Docket No. 390458 (March 22, 1999, Devlin, J.) (Haynes not extended to architects); Hopper v. Hemphill, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV 99-0171709S (May 10, 2000, Hickey, J.) (2000 Ct. Sup. 5705) (Haynes not extended to architects); See also Pollock v. Panjabi, Superior Court, judicial district of New Haven, Docket No. 402199 (May 17, 2000, Levine, J.) (27 Conn.L.Rptr. 316) (2000 Ct. Sup. 6152). (Haynes not extended to PhD expert in spinal bio-mechanics as well as a kinesiology expert).
The Appellate Court citing Haynes and Beverly Hills Concepts applied the entrepreneurial rule, striking a CUTPA claim against a clinical psychologist. Rumbin v. Baez, 52 Conn. App. 487, 490-91 (1999). The plaintiff was denied state services on the basis of an evaluation conducted by the defendant, a licensed clinical psychologist. The CT Page 1883 plaintiff alleged "that the defendant was not qualified or competent to perform such tests but falsely reported himself as such for personal pecuniary gain" Id. 489.
The allegations in Haynes that were held to be grounds for a malpractice claim and not an entrepreneurial CUTPA violation were: Yale New Haven Hospital held itself out as a major trauma center, the emergency department was inadequately staffed, the existing staff was inadequately trained and the emergency room procedures fell short of major trauma center standards. The Supreme Court count concluded that "the hospital's representation to the public that it met the standards of competency of a major trauma center and its failure to meet those standards constituted grounds for a malpractice claim but did not rise to the level of a CUTPA claim." Rumbin v. Baez, supra, 52 Conn. App. 490. InRumbin the Appellate Court concluded: "The mere fact that the defendant received compensation for services that he was not competent to perform is no different from Yale-New Haven Hospital's receiving compensation for services that it could not deliver." Id. 490-91.
Clinical psychologists are licensed pursuant to General Statutes §§20-186 to 20-195. They are approved by a Board of Examiners of Psychologists. The healing acts licensing sections are contained in Chapter 369, General Statutes § 20-1 et seq.
"The practice of the healing acts means the practice of medicine, osteopathy, chiropractic, podiatry, natureopathy and . . . the practice of optometry." General Statutes § 20-1. The licensing requirements for those listed healing arts are contained in Chapter 370, Medicine and Surgery; Chapter 371, osteopathy; Chapter 372, chiropractic; Chapter 373, natureopathy; Chapter 375, podiatry; and Chapter 380, optometry. Clinical psychologists are licensed under Chapter 383, Architects under Chapter 390, and Engineers under Chapter 391. Using this analysis, Rumbinv. Baez expanded the list of professionals subject to the entrepreneurial rule to include clinical psychologists, a profession not licensed or defined as health care providers by Connecticut statutes.
The term "health care provider" is defined by statute as: "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, "employee or agent thereof acting in the course and scope of his employment." General Statutes § 52-184b(a). If clinical psychologists are to be included as health care providers under Haynes, then the entrepreneurial rule must cover the following state licensed practices: Physical Therapist, Chapter 376; Occupational Therapists, Chapter 376a; Radiologists, Chapter 376c; CT Page 1884 Midwifery, Chapter 377; Nurses, Chapter 378; Nurses Aides, Chapter 378a; Dentistry, Chapter 379; Dental Hygienists, Chapter 379a; Opticians, Chapter 381; Respiratory Care Practitioners, Chapter 381a; Pharmacologists, Chapter 382; Massage Therapists, Chapter 384a; Dieticians and Nutritionists, Chapter 384b; Acupuncturists, Chapter 384c; Paramedics, Chapter 384d; and Hypertrichologists, Chapter 389.
The Haynes court did not draw a bright line and limit the entrepreneurial exception to health care providers. It did not define health care providers. In its next examination of the subject, the court in Beverly Hills Concepts expanded Haynes to include attorneys. An examination of the licensing statute indicates that the further defining of who is a health care provider will be fraught with the danger of inconsistency and unpredictability. A better rule would be a bright line; all those accused of professional malpractice can claim the benefit of the entrepreneurial rule in CUTPA, all professions.
This court reads Rumbin v. Baez as stepping in that direction. Haynes has been extended to other professions in well reasoned opinions. Day v.Yale University School of Drama, Superior Court, judicial district of New Haven at New Haven, Docket No. CV97-00400876 S (March 7, 2000, Licari, J.) (26 Conn.L.Rptr. 634) (2000 Ct. Sup. 3305) (Haynes extended to CUTPA claims against a graduate school and two deans of the school);Shareamerica, Inc. v. Ernst and Young, Superior Court, judicial district of Waterbury at Waterbury, Docket No. CV93-0150132S (July 2, 1999, Sheldon, J.) (1999 Ct. Sup. 9951) (Haynes applicable to accountants and auditors).
This bright line can be viewed by examining two Superior Court decisions, one applying and one denying, the entrepreneurial rule. TheAdvest Group, Inc. v Arthur Andersen L.L.P., Superior Court, judicial district of New Britain, Docket No. CV 97-0571417 (July 28, 1998, Aurigemma, J.) (22 Conn.L.Rptr. 520) (1998 Ct. Sup. 9211) (applyingHaynes to the profession of accounting in a malpractice action); Doe v.Julia Day Nursery, Superior Court, judicial district of Ansonia-Milford of Milford, Docket No. CV 98-0062198 S (November 16, 1998, Corradino, J.) (23 Conn.L.Rptr. 360) (1998 Ct. Sup. 13067) (Declining to apply Haynes
in a day-care center context, a nonprofession. "It is difficult to understand how the reasoning of case like Haynes . . . and Heslin . . . apply to providers of day care so as to exclude CUTPA coverage. Haynes basically decided that professional negligence (malpractice) does not fall under the act.").
Like attorneys and health care providers, engineers are extensively CT Page 1885 regulated by a state agency other than the Department of Consumer Protection. See General Statutes § 20-299 et seq. The State Board of Examiners for Professional Engineers and Land Surveyors (the "Board') regulates the conduct of engineers in this state pursuant to the authority granted to it by General Statutes § 20-300. Specifically, the Board has the authority to conduct investigations into complaints about the conduct of engineers, General Statutes § 20-307a, and to impose sanctions on engineers, including revocation or suspensions of licenses. General Statutes §§ 20-300 and 20-307a. Engineers are subject to licensing upon completion of required courses of study and the passing of an exam administered by the Board. General Statutes §20-301(1). Engineers are subject to further regulations adopted under the authority of the statute and other provisions of the statutes contained in Chapter 391, entitled "Professional Engineers and Land Surveyors."
The standards set forth above were used by Judge Aurigemma in determining that the accounting profession was covered by Haynes. TheAdvest Group, Inc. v. Arthur Anderson. L.L.P., supra, Superior Court, Docket No. CV 97-0571417 ("Based on the foregoing, the same limited exemption from CUTPA that applies to the practice of law and medicine should apply to the practice of accounting that is, only claims arising out of the commercial or entrepreneurial aspects of accounting should fall under CUTPA.")
This court holds that only the entrepreneurial aspects of the engineering profession are subject to CUTPA. Claims of professional malpractice by engineers are exempt from CUTPA.
"Professional negligence or malpractice . . . is defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services."Trimel v. Lawrence Memorial Hospital Rehabilitation Center,61 Conn. App. 353, 357-58 (2001); See also Santopietro v. New Haven,239 Conn. 207, 226 (1996).
 Furthermore, malpractice "presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill . . . (Citations omitted; emphasis added.) Camposano v. Claiborn, 2 Conn. Cir. Ct. 135, 136-37, 196 A.2d 129 (1963). From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are (1) the defendants are CT Page 1886 sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment.
Trimel v. Lawrence Memorial Hospital Rehabilitation Center, supra,61 Conn. App. 318.
The two counts alleging CUTPA, Counts 26 and 27, relate to improper change orders and overcharges. There are no factual allegations in these two counts that the general billing practice of Needham was such that it violated CUTPA. The plaintiff only alleges a conclusory statement without factual specificity in paragraph 60 of both counts: "The foregoing actions of Needham are unethical, unscrupulous and offensive to public policy because, among other things, these actions, individually and collectively, illustrate a pattern and practice by which Needham extracted fees from Worldwide to which Needham was not entitled." There are no allegations of any other extra fees charged by Needham other than Change Order #6 in the amount $37,675. The plaintiff alleges breach of contract in the First Count of the complaint against Needham in that; "The Change Order and the Purchase Price did in fact contain numerous mischarges and overcharges including, without limitation . . . f. $37,675 for engineering services to which IVth Shea and Varco were not entitled." In order to prove such mischarge or overcharge, the professional duties of Needham must be examined. This court has already found that the allegations of Count 26 and 27 by themselves are nothing more than breach of contract claims. Needham has been sued in its capacity as an engineering professional. The claim arises out of its practice of engineering and the damages claimed are substantially related to the performance of these engineering services.
When reviewing a plaintiff's CUTPA allegations, a court must "look to the underlying nature of the claim to determine whether it is really a [professional negligence] claim recast as a CUTPA claim." Haynes v.CT Page 1887Yale-New Haven Hospital, supra, 243 Conn. 38. This court has reviewed the allegations with that rule in mind. Compare Levett v. Etkind, 158 Conn. 567, 573 (1969) (Medical malpractice claim when patient injured in a fall while undressing for treatment) and Badrigian v.Elmcrest Psychiatric Institute, Inc., 6 Conn. App. 383,386 (1986) (Not a malpractice claim when psychiatric patient struck by automobile while walking across public highway between two Elmcrest buildings on his way to lunch).
This court concludes that the CUTPA counts have only alleged a professional malpractice claim against Needham and Associates, Inc. and not a violation of the entrepreneurial or commercial aspect of the relationship. One conclusory allegation that there was pattern or practice by which Needham extracted fees from Worldwide to which Needham was not entitled is insufficient to support a CUTPA claim.
Therefore, for those reasons alone, the motion to strike Counts 26 and 27 must be GRANTED.
This court, therefore, GRANTS the motion to strike counts 15, 19, 26 and 27 in its entirety as to the defendant, Needham and Associates, Inc. The plaintiff's allegations as against the defendant Needham remain in the following counts: Count 1, breach of contract; Count 3, breach of duty of good faith and fair dealing; and Count 28, unjust enrichment.
SO ORDERED.
BY THE COURT, TIERNEY, J. CT Page 1888