[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' WHETHER ALLEGATION OF WRONGFUL DISCHARGE TO AVOID EXERCISE OF VALUABLE STOCK OPTIONS SUPPORTS CAUSE OF ACTION
On May 18, 2000, plaintiff, Kenneth C. Shafton filed a seven count complaint against the defendant, DSL.net, Inc., his former employer, alleging breach of contract (count one), breach of implied covenant of good faith and fair dealing (count two), promissory estoppel (count three), wrongful discharge (count four), violation of Connecticut's wage CT Page 3090 protection statutes (count five), negligent misrepresentation (count six) and tortious interference with a contract (count seven). Defendant DSL.net has filed a motion to strike counts four, five and seven of the plaintiff's complaint on the asserted grounds that: (1) the plaintiff's wrongful discharge claim fails because he has an available statutory remedy, (2) the plaintiff's claim for violation of Connecticut's wage protection statutes fails because unvested stock options are not "wages" under the statutory definition and (3) the plaintiff's tortious interference with a contract claim fails because the plaintiff has failed to allege facts sufficient to support the elements of such a claim.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulknerv. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 626,749 A.2d 630 (2000).
The defendant argues in its memorandum that count four of the plaintiff's complaint[1] fails because the plaintiff has an available statutory remedy under General Statutes § 31-72[2] to recover his alleged unpaid wages.[3] The plaintiff maintains that the defendant's argument falls under its own weight because "[o]n page 3 of its brief, the defendant argues that Mr. Shafton's claim for common law wrongful discharge must be stricken because he has an available statutory remedy to recover his unpaid wages pursuant to General Statutes § 31-72. On page 5 of its brief, however, the defendant argues the opposite — that Mr. Shafton does not have a claim under General Statutes § 31-72
[because unvested stock options are not wages]. If the argument on page 5 is accepted, the argument on page 3 must be rejected." (Plaintiff's Memorandum, p. 5.)
An employee may have a common law cause of action in tort for wrongful discharge if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy. Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471, 475, 427 A.2d 385 (1980); see also Burnham v. Karl Gelb, P.C., 252 Conn. 153, 159, 745 A.2d 178 (2000). In Atkins v.Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223 (1985), the Appellate Court recognized a limitation on the public policy exception to the at-will doctrine. The court in Atkins embraced the concept that "[a] finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public CT Page 3091 policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." Id. at 648 (citing Wehr v. Burroughs Corp.,438 F. Sup. 1052, 1054 (E.D.Pa. 177). See also Burnham v. Karl Gelb,P.C., 252 Conn. 153, 159-60. Thus, the existence of a statutory remedy precludes the plaintiff from bringing a common-law wrongful discharge action based on the public policy exception to the at-will employment doctrine. Id., 162-64.[4]
Contrary to the defendant's argument, this court finds that the plaintiff does not have an available statutory remedy under § 31-72. The plaintiff alleges that, at the time of the plaintiff's termination, the stock options had not vested under the terms of the defendant's employment offer. Unvested stock options do not qualify as wages under § 31-72. See Okon v. Medical Marketing Group, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306032 (August 18, 1994, Pittman, J.) (12 Conn. L. Rptr. 228, 229); see also Swihart v.Country Home Bakers, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 60945 (December 3, 1998,Corradino, J.).[5]
The present case is similar to Okon v. Medical Marketing Group, Inc.,
supra, 12 Conn. L. Rptr. 228, wherein the plaintiff claimed that he was terminated so that the defendants could avoid paying stock option compensation to him, an option which was to vest four days after he was terminated. In that case the defendants moved to strike the wrongful termination claim on the ground that the wage protection statutes provided a remedy, and the plaintiff opposed the motion to strike "on the grounds that the wage protection statutes, while they express a public policy of entitling an employee to collect compensation that had been earned, do not provide the remedy he seeks because the defendants' actions in terminating him in bad faith before his [stock] options vested preclude his claim under § 31-72; thus he is left with this wrongful termination claim." Id. In denying the motion to strike, the court in that case, stated that it adopted "the reasoning of Judge Aronson in Cookv. Alexander Alexander of Connecticut, Inc., 40 Conn. Sup. 246 (1985), in finding that a complaint alleging that plaintiff's employment was terminated in order to prevent the vesting of certain rights to compensation which, if vested, would be enforceable rights under Connecticut's wage protection statutes states a cause of action for wrongful termination." Id., 228-29. This court finds that the plaintiff's allegation as to the matter of stock options as the basis for wrongful termination, if proved, would offend public policy. Nevertheless, this court also finds that the existence of the other causes of action in this case illustrate the availability of other vehicles of legal redress for a CT Page 3092 proven violation of this public policy. Atkins v. Bridgeport HydraulicCo., Id. at 648. Therefore, this court finds that the fifth count is not a legally cognizable one.
The defendant also argues that the allegations of tortious interference with contract — set out in the seventh count of the plaintiff's complaint — fails because the plaintiff has not alleged facts sufficient to support the elements of such a claim. Specifically, the defendant asserts that the plaintiff has failed to plead facts showing the defendant's "improper motive or improper means."
"[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Internal quotation marks omitted.) Rumbin v. Baez, 52 Conn. App. 487, 492,727 A.2d 744 (1999). "Nevertheless, not every act that disturbs a contract or business expectancy is actionable. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Internal quotation marks omitted.) Larsen Chelsey RealtyCo. v. Larsen, 232 Conn. 480, 502 n. 24, 656 A.2d 1009 (1995).
In count seven of the complaint, the plaintiff alleges that "defendant DSL.net made false statements in order to induce Mr. Shafton to terminate his relationship with Aperture Technologies, notwithstanding the fact that his salary would be substantially lower at DSL.net." Such an alleged misrepresentation meets the standard of conduct that translates into a claim for tortious interference with contract. Larsen Chelsey Realty Co.v. Larsen, supra, 232 Conn. 502 n. 24.
For the foregoing reasons and upon the foregoing authorities, the court issues the following orders:
1] defendant's motion to strike count four of the complaint is granted;
2] defendant's motion to strike count five of the complaint is granted; and
3] defendant's motion to strike count seven of the complaint is denied.
Clarance J. Jones, J. CT Page 3093