[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO STRIKE (# 105)
On May 12, 1998, the plaintiff's decedent, Frank Diotauiti, was admitted to the Hospital of Saint Raphael in order to have a Whipple procedure performed. He underwent certain surgical procedures on May 13 and 14, 1998. While in the hospital, he was exposed to and contracted Methicillin-Resident Staphylococcus Aureus ("MRSA") and also contracted Vancomycin-Resistant Enterococcus ("VRE"). He died on July 17, 1998. The plaintiff's action has been brought in three counts. The first and second counts sound in negligence and the third count alleges a violation of the Connecticut Unfair Trade Practice Act (CUTPA).
In its short life, this case already presents a convoluted procedural picture. The original complaint was filed on September 26, 2000. On November 2, 2000, the defendants Hospital of Saint Raphael (Hospital) and Saint Raphael Healthcare System, Inc. (SRHS) filed their first motion to strike. On November 14, 2000, the plaintiff moved for an extension of time to respond to the motion to strike, which was granted to December 15, 2000. On December 15, 2000, the plaintiff filed a Request for Leave to File Amended Complaint and a proposed amended complaint. On January 9, 2001,[1] the defendants filed their second motion to strike (# 105) directed at the amended complaint. Thereafter, on January 25, 2001, the plaintiff filed a motion for a thirty day extension to respond to the second motion to strike, which was granted by the court. On March 30, 2001, well beyond the thirty day extension, the plaintiff filed an objection to the motion to strike and also filed a Request for Leave to File Amended Complaint with a second proposed amended complaint attached.
Prior to that time, the defendants' second motion to strike had been scheduled for the April 2, 2001 short calendar. When the parties appeared for argument, the court inquired whether they would agree to allow the court to decide the motion to strike as if it were directed to the second proposed amended complaint filed on March 30, 2001. In the interests of expediting the pleading process in this case, the parties have so agreed. The defendant SRHS has moved to strike all counts of the complaint against it and the defendant Hospital has moved to strike count three. Accordingly, the court will determine whether those counts of the CT Page 4729 second proposed amended complaint should be stricken.
In ruling on this motion to strike, "the court is limited to the facts alleged in the complaint." Waters v. Autori, 236 Conn. 820, 825,676 A.2d 357 (1996). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." S.M.S. Textile v.Brown, Jacobson, Tillinghast, Lahan and King, P.C., 32 Conn. App. 786,796, 631 A.2d 340 (1993). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992).
I. As to the Hospital
The defendant Hospital has moved to strike count three of the complaint against it on the grounds that Connecticut law does not recognize a CUTPA claim based on medical malpractice. It relies on Haynes v. Yale-New HavenHospital, 243 Conn. 17, 699 A.2d 964 (1997); Rumbin v. Baez,52 Conn. App. 487, 727 A.2d 744 (1999) and two recent Superior Court decisions striking CUTPA counts with facts almost identical to this case, Bridgeport Hospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (October 24, 2000, Hodgson, J.); BridgeportHospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (Feb. 24, 2000, Hodgson, J.). In Haynes, supra, 243 Conn. 38, the Supreme Court concluded that "the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medicalmalpractice based on adequacy of staffing, training, equipment or supportpersonnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice into a CUTPA claim." (Emphasis added.)
The plaintiff argues, without citation to controlling authority, that the CUTPA count should not be stricken because it alleges that the defendants "for economic and commercial purposes . . . engaged in conduct intentionally designed to cover-up the existence of the MRSA outbreak and to preclude patients from learning about the serious risks to patients associated with exposure to the MRSA outbreak" (¶ 20). However, the conduct the Hospital is alleged to have engaged in is a failure to follow standard infection control procedures and to employ standard surveillance methods to control the infection (¶ 22), another way of stating that the hospital beached the standard of care. Moreover, the allegation that the breach of the standard of care was motivated by "economic considerations, including a desire to preserve the reputation of the hospital" (¶ 21), does not transform the essential nature of the CT Page 4730 conduct alleged — the provision or the failure to provide appropriate medical care.
In the Bridgeport Hospital cases, the plaintiffs initially alleged that they suffered complications because, when they were elective inpatients at the hospital, the hospital was experiencing an MRSA outbreak and the hospital had failed to advise them of the nature and extent of the outbreak or the risk it presented to them for business and economic reasons. After Judge Hodgson struck the CUTPA count because the patients did not allege any "practice or conduct separate from the provision of medical care during their hospitalization," such as a claim of intentional misrepresentation, Bridgeport Hospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (February 24, 2000, Hodgson, J.), the plaintiffs pleaded over, this time alleging that the hospital misrepresented and covered up the MRSA outbreak in order to attract and retain patients. In again striking the CUTPA count, Judge Hodgson examined the specific allegations made by the plaintiffs.Bridgeport Hospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (October 24, 2000, Hodgson, J.) The plaintiff here has made identical allegations and this court agrees with Judge Hodgson's analysis of these claims.
As to allegations identical to those alleged in count three, ¶ 18 regarding advertising, Judge Hodgson held that the "[p]ublication of truthful advertising concerning a health care facility does not violate CUTPA" and the complaint contained (¶ 21), does not transform the essential nature of the conduct alleged — the provision or the failure to provide appropriate medical care.
In the Bridgeport Hospital cases, the plaintiffs initially alleged that they suffered complications because, when they were elective inpatients at the hospital, the hospital was experiencing an MRSA outbreak and the hospital had failed to advise them of the nature and extent of the outbreak or the risk it presented to them for business and economic reasons. After Judge Hodgson struck the CUTPA count because the patients did not allege any "practice or conduct separate from the provision of medical care during their hospitalization," such as a claim of intentional misrepresentation, Bridgeport Hospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (February 24, 2000, Hodgson, J.), the plaintiffs pleaded over, this time alleging that the hospital misrepresented and covered up the MIRSA outbreak in order to attract and retain patients. In again striking the CUTPA count, Judge Hodgson examined the specific allegations made by the plaintiffs.Bridgeport Hospital v. Cone, Superior Court, judicial district of Waterbury, No. 151787 (October 24, 2000, Hodgson, J.) The plaintiff here has made identical allegations and this court agrees with Judge Hodgson's CT Page 4731 analysis of these claims.
As to allegations identical to those alleged in count three, ¶ 18 regarding advertising, Judge Hodgson held that the "[p]ublication of truthful advertising concerning a health care facility does not violate CUTPA" and the complaint contained no allegations that the hospital published false advertising regarding the MRSA outbreak upon which the patients relied. As to allegations identical to those contained in count three, ¶ 22, Judge Hodgson concluded, as this court has, that the allegations amounted to nothing more than a claim of failure to adhere to the medical standard of care. As to allegations identical to those alleged in count three, ¶ 27, Judge Hodgson concluded that it alleged no more than "the failure to disclose the medical risk of the health care to be provided by hospital."
Count three of the second proposed amended complaint, reduced to its essential allegations and viewed in a light entirely favorable to the plaintiff, alleges only that the defendants failed to inform the plaintiff's decedent of a medical risk and failed to take appropriate medical steps to protect him from that risk. This count must be stricken under Haynes.
II. As to SRHS
The defendant SRHS has presented two alternative grounds in support of its motion to strike. It maintains that all counts against it must be stricken because "the care and treatment of plaintiff's decedent was exclusively provided by the Hospital and plaintiff has pled no facts to support piercing the corporate veil of the Hospital." It also maintains that counts one and two must be stricken because the "plaintiff has not and cannot plead a provider/patient relationship between her decedent and SRHS." It adopts the Hospital's argument as to the CUTPA count, which the court has already stricken.
The plaintiff brought this action against two separate corporations. As alleged in count one, ¶ 2, the defendant Hospital is a "corporation organized and existing under the laws of the State of Connecticut and is licensed to provide health care services to the general public under the laws of the State of Connecticut." The plaintiff's decedent was admitted as a patient at the defendant Hospital. As alleged in count one, ¶ 3, the defendant SRHS is "a corporation organized under the laws of the State of Connecticut and is the parent corporation of the Hospital." Although a relationship between the two corporations is alleged, "it is a fundamental principle of corporate law that `the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares of the subsidiary and the two CT Page 4732 enterprises have identical directors and officers. Such control . . . is no more than a normal consequence of controlling share ownership.' . . . Furthermore, the separate corporate entities . . . of affiliated corporations will be recognized, absent illegitimate purposes, `unless [corporate assets] are intermingled . . . the formalities of separate corporate procedures for each corporation are not observed . . . the corporation is inadequately financed. . . . the respective enterprises are not held out to the public as separate enterprises . . . the policies of the corporation are not directed to its own interests primarily but rather to those of the other corporation.' (Internal citations omitted)."SFA Folio Collection, Inc. v. Bannon, 217 Conn. 220, 232-33, 585 A.2d 666
(1991). There are no allegations of fact in this complaint to support any conclusion other than that SRHS and the Hospital are two separate corporate entities. Nor are there any facts alleged which would allow a fact finder to disregard the existing corporate structure of these two entities or meet the common law standards for piercing the corporate veil. The mere fact that SRHS is the parent company of the Hospital does not establish its liability for any acts of the Hospital. United Statesv. Bestfoods, 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).
Thus, the plaintiff must plead some facts which establish a duty on the part of SRHS to her decedent in order for counts one and two, which sound in negligence, to survive against SRHS. The plaintiff has alleged, in count one, ¶ 12, that SRHS "as the corporation responsible for oversight of all policy and decision-making for the defendant hospital, owed plaintiff a duty to make its defendant hospital a safe place for the plaintiff and public at large." The plaintiff, however, has alleged no facts which support this conclusory allegation. There are no allegations from which it can be concluded that SRHS owed the plaintiff's decedent a duty under any contract, statute or the common law. See Coburn v. LenoxHomes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). Nor are there any allegations which establish a patient/provider relationship between the plaintiff's decedent and SRHS upon which a medical malpractice claim can be premised. See Sackter v. St. Onge, Superior Court, judicial district of Hartford, No. 504004 (April 16, 1993, Wagner, J.); Louisell 
Williams, Medical Malpractice § 8.03[1] (Matthew Bender 2000).
In an effort to avoid the obvious fact that there was no relationship between the plaintiff's decedent and SRHS, the plaintiff has alleged, in count one, ¶ 11, that he was "admitted to the defendant Hospital which is the agent of the defendant SRHS." However, again plaintiff fails to allege facts to support the conclusion of such an agency relationship. See Beckenstein v. Potter and Carrier, Inc., 191 Conn. 120,133, 464 A.2d 6 (1983) (The three elements of an agency relationship are "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding CT Page 4733 between the parties that the principal will be in control of the undertaking.") Similarly, there are no facts alleged to support the conclusory allegation in count one, ¶ 5 seeking to hold SRHS "responsible for the policies and procedures and the promulgation of same within the defendant hospital" under the doctrine of respondeat superior. The doctrine of respondeat superior, which holds "a master liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business,"Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 500, 656 A.2d 1009
(1995), only applies in the context of a principal/agent or employer/employee relationship. No such relationship is alleged regarding the two independent corporate defendants — SRHS and the Hospital.
Thus, the defendant SRHS is correct as to all its grounds for striking the complaint against it. Accordingly, the complaint in its entirety is stricken as to the defendant SRHS.
III. Conclusion
For the foregoing reasons, the defendant Hospital of Saint Raphael's motion to strike count three of the complaint is granted and the defendant Saint Raphael Healthcare System, Inc.'s motion to strike counts one, two and three of the complaint is granted.
Linda K. Lager, Judge