[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
This is a motion for summary judgment filed by the defendant PaineWebber. The following facts and procedural history are relevant to the court's decision.
 I. FACTS
The Danbury Cemetery Association, Inc. (Association), employed the plaintiffs, Alfred B. Bishop, Anthony M. Tangredi and John Glowney. The plaintiffs were members of District No. 14 of the United Steelworkers of America, AFL-CIO (Union) and were covered by a collective bargaining agreement. The collective bargaining agreement between the Association and the Union took effect on June 1, 1993, and was set to expire on June 1, 1996. On March 21, 1996, the Union notified the Association that it desired to negotiate a new collective bargaining agreement.
On September 14, 1995, Jackson F. Eno, an employee of the defendant, PaineWebber, Inc. (PaineWebber), met with an Association representative in an effort to sell the Association securities through PaineWebber.
Eno was also involved in the cemetery maintenance business and owned EHL, a partnership providing cemetery maintenance consulting services. On October 9, 1995, Eno wrote to the Association on PaineWebber letterhead. The letter suggested that the Association develop a five year plan for "reducing full time employees to one superintendent and one office manager and contracting for all cemetery maintenance and operations — or hire a cemetery management company for all day to day CT Page 1349 operating needs." (Defendant's Memorandum, Exhibit 7.)
On December 16, 1995, Eno sent the Association a letter written on EHL letterhead. The letter explained that EHL is a consulting partnership owned by Eno, Arvah Lyon and Jerry Hannebury. The letter also outlined a plan of action that essentially suggested that the Association enter into a consulting agreement with EHL, terminate the plaintiffs and hire a maintenance crew selected by EHL. On April 29, 1996, the Association hired Eno's company, EHL, to assist them with their cemetery maintenance work and bring in contractors. EHL selected H. S. Plaut Cemetery Co. (H. S. Plaut) to perform the cemetery maintenance work previously performed by the plaintiffs, and, in return, EHL would receive an annual consultation fee from the Association. On April 30, 1996, the Association terminated the plaintiffs' employment.
The Union filed a claim on the plaintiffs' behalf against the Association with the Connecticut Department of Labor. The plaintiffs also sued the Association, three members of the board of directors, PaineWebber, EHL, Eno and H. S. Plaut in state court in 1996. The plaintiffs settled the state court and department of labor complaints against the Association and the individual board members. The plaintiffs no longer have a complaint pending against Eno because he filed for bankruptcy. The plaintiffs also withdrew their complaint against EHL and plaintiff H. S. Plaut.
The action against the remaining defendant, PaineWebber, was inadvertently marked "withdrawn" during a settlement with other defendants. As a result, the plaintiffs filed the present action pursuant to the General Statutes § 52-592 on May 5, 1998, naming PaineWebber as the sole defendant. A nine count amended complaint was filed by the plaintiffs on May 12, 1998. Each plaintiff separately alleges tortious interference with an employment relationship (counts one, two and three) and intentional infliction of emotional distress (counts four, five and six).[1] PaineWebber moves for summary judgment as to all counts.
 II DISCUSSION
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The party CT Page 1350 seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Appleton v. Boardof Education, supra, 254 Conn. 209. "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern NewEngland Telephone Co., 44 Conn. App. 657, 663, 691 A.2d 1107 (1997). A party's conclusory statements, "in the affidavit and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material facts." Gupta v. New Britain General Hospital, 239 Conn. 574,583, 687 A.2d 111 (1996).
 A Tortious Interference With Employment Relationship
In the first, second and third counts, the plaintiffs allege that PaineWebber, through Eno, tortiously interfered with their collective bargaining agreement causing their employment to be terminated and that PaineWebber is responsible under the doctrine of repondeat superior for the actions of its employee. In support of its motion for summary judgment, PaineWebber argues that counts one, two, and three (1) are preempted by the federal Labor Management Relations Act, 29 U.S.C. § 141
et seq., and (2) are otherwise deficient and fail as a matter of law due to lack of evidence.
In the present case, no evidence has been presented to show that either PaineWebber or Eno knew about the employment relationship between the plaintiffs, the Association and the Union. The plaintiffs have not offered any evidence at all that Eno or PaineWebber were aware of the existence of a collective bargaining agreement. Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (a), federal labor law displaces state law in cases that are substantially dependent upon an analysis of the terms of a labor contract or require an interpretation of such an agreement for their resolution. Barbieri v. United TechnologiesCorp., 255 Conn. 708, 717-18, 771 A.2d 915 (2001). "[C]laims bearing no relationship to a collective bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." (Internal quotation marks omitted.)Barbieri v. United Technologies Corp., supra, 255 Conn. 725. Since the plaintiff's collective bargaining agreement does not have to be interpreted before analyzing the tortious interference claim, the claim is not preempted.[2]
CT Page 1351
PaineWebber also argues that the only evidence linking Eno's conduct to PaineWebber is the letter written by Eno on PaineWebber letterhead and that this evidence is insufficient to establish the elements of a claim of tortious interference with a contractual relationship. The essential elements a plaintiff must prove to maintain a claim for tortious interference with contract rights or other business relations include "the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Internal quotation marks omitted.) Rumbin v.Baez, 52 Conn. App. 487, 492, 727 A.2d 744 (1999), quoting Solomon v.Aberman, 196 Conn. 359, 364, 493 A.2d 193 (1985).
Connecticut courts have "long recognized a cause of action for tortious interference with contract rights or other business relations . . . [The case law shows, however, that] not every act that disturbs a contract or business expectancy is actionable. . . . [F]or a plaintiff to successfully prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [An] action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification . . . In other words, the [plaintiff] bears the burden of alleging and proving lack of justification on the part of the [defendant]." (Citations omitted; internal quotation marks omitted.) Daley v. Aetna Life Casualty Co., 249 Conn. 766, 805-06, 734 A.2d 112 (1999).
PaineWebber argues that: (1) no evidence has been presented as to PaineWebber's intent; (2) the plaintiffs have no evidence Eno was acting on behalf of PaineWebber; and (3) the plaintiffs have no evidence that PaineWebber's conduct was tortious. In response, the plaintiffs argue that PaineWebber knew about the employment relationship between the plaintiffs and the Association through its agent, Eno, and that, therefore, PaineWebber is responsible for the actions of its employee under the doctrine of respondeat superior. "[U]nadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact on a motion for summary judgment." (Internal quotation marks omitted.) New Milford Savings Bank v. Roina,38 Conn. App. 240, 245, 659 A.2d 1226, cert. denied, 235 Conn. 915,665 A.2d 609 (1995). CT Page 1352
The plaintiffs base their claim on a letter by Eno to the Association recommending that it "consider reducing full time employees." In the letter, Eno also suggests that the Board consider "contracting for all cemetery maintenance and operations — or hire a cemetery management company for all day to day operating needs." (Defendant's Memorandum, Exhibit 7.) Even assuming that Eno knew about the existence of a collective bargaining agreement, as a matter of law, the suggestions contained in the letter are not sufficient to maintain a tortious interference claim because the plaintiffs fail to provide evidence to support their claim that Eno acted on behalf of PaineWebber. Indeed, the deposition testimony of Bishop states that any proposal that was made by Eno which suggested the termination of the plaintiffs was done on behalf of EHL and not on behalf of PaineWebber. (Deposition of Alfred E. Bishop, February 11, 2000, pp. 31-32.) The evidence demonstrates that Eno only acted to further his own self interest when he wrote the letter on PaineWebber letterhead to the Association, the claim against PaineWebber necessarily fails. "[I]n order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business. . . . But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply. . . . [I]f [the] employee's actions are not authorized by his employer and he is acting for his own interests and not in furtherance of his employer's business, [the] employer cannot be held vicariously liable for [the] employee's actions. . . ." (Citations omitted; internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 500-01, 656 A.2d 1009 (1995).
The plaintiffs have not provided any evidence of PaineWebber's involvement in the termination of the plaintiffs other than the letter signed by Eno on PaineWebber letterhead. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert he existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . ." (Citations omitted; internal quotation marks omitted.) Maffucco v. Royal Park Ltd.Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998).
 B Intentional Infliction of Emotional Distress CT Page 1353
The plaintiffs claim they were the victims of intentional infliction of emotional distress and that PaineWebber is responsible. Specifically, the plaintiffs claim that Eno, acting on behalf of PaineWebber, is responsible for their termination and that under the doctrine of respondeat superior, PaineWebber is liable for Eno's actions.
In response, PaineWebber claims that: (1) there is no evidence that Eno acted on behalf of PaineWebber; (2) there is no evidence PaineWebber intended to inflict emotional distress on the plaintiffs; (3) termination, in and of itself, is insufficient to constitute extreme and outrageous conduct, especially where PaineWebber did not terminate the plaintiffs' employment; and (4) the plaintiffs have not suffered severe emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (I) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to. determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education, supra, 254 Conn. 210.
For a defendant to be liable for intentional infliction of emotional distress, the conduct must exceed "all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Id., 210-11.
The manner in which plaintiffs were terminated does not satisfy the legal requirements of a claim for intentional infliction of emotional distress as to PaineWebber. This is especially true since it is CT Page 1354 undisputed that PaineWebber did not terminate the plaintiffs. The plaintiffs' reliance on cases such as DeLaurentis v. New Haven,220 Conn. 225, 597 A.2d 807 (1991), in support of their intentional infliction of emotional distress claim is misplaced as DeLaurentis deals with vexatious prosecution and altogether avoids rendering a determination as to the emotional distress claim.
 III CONCLUSION
The plaintiffs have failed to produce sufficient evidence to establish the tortious interference claim. There is no evidence that PaineWebber had any knowledge of or authorized Eno's actions. Furthermore, there is no evidence that Eno acted to further the affairs of the principal since PaineWebber is not engaged in the cemetery maintenance business. PaineWebber's motion for summary judgment is granted as to all counts.
HOLDEN, J.