LORNA A. BARBIERI ET AL. *v.* UNITED
TECHNOLOGIES CORPORATION
(SC 16428)

Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 12—officially released April 24, 2001

*David S. Rintoul,* for the appellants (plaintiffs).

*Kenneth W. Gage,* with whom were *Jamal M. Dawkins* and, on the brief, *Albert Zakarian,* for the appellee (defendant).

*Opinion*

KATZ, J. This appeal concerns the preemptive effect of the Labor Management Relations Act, 29 U.S.C. §§ 141 through 197, and the National Labor Relations Act, 29 U.S.C. §§ 151 through 169,[1] specifically, whether

---

[1] The National Labor Relations Act, also known as the Wagner Act, was first enacted in 1935. See National Labor Relations Act of 1935, Pub. L. No. 198, § 1, 49 Stat. 449. The Labor Management Relations Act, or Taft-Hartley Act, amended the Wagner Act in 1947. See Labor Management Relations Act of 1947, Pub. L. No. 101, § 1, 61 Stat. 136. Although both acts are now part of the same statutory scheme, the National Labor Relations Act remains distinct from the Labor Management Relations Act. See 29 U.S.C. §§ 141, 167; *Communications Workers of America* v. *Beck,* 487 U.S. 735, 747–50, 108 S. Ct. 2641, 101 L. Ed. 2d 634 (1988) (discussing historical origins of union security agreements under Wagner Act and Taft-Hartley Act); *Sears, Roebuck & Co.* v. *San Diego County District Council of Carpenters,* 436

the plaintiffs, Lorna A. Barbieri, Herbert Porter and Raymond Raptis, representing a class of employees of the defendant, United Technologies Corporation, are precluded from asserting their breach of contract claims in state court. Following a jury verdict for the defendant, the trial court denied the plaintiffs' motion to set aside the verdict and concluded that the plaintiffs' claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (a). On appeal, the plaintiffs contend that the trial court improperly determined that their breach of contract claims were preempted by federal law and, further, that the trial court improperly instructed the jury in several respects. We conclude that the plaintiffs' claims, although not preempted under 29 U.S.C. § 185 (a), are subject to the exclusive jurisdiction of the National Labor Relations Board and are therefore preempted pursuant to *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959) (holding that when activity is arguably subject to §§ 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158, "[s]tates as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board"). Accordingly, we vacate the judgment for the defendant and remand the case to the trial court with direction to dismiss the action.

The jury reasonably could have found the following facts. At various times before the events giving rise to this dispute occurred, the plaintiffs had accepted jobs

U.S. 180, 190, 98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978) (describing first enactment of National Labor Relations Act as "mark[ing] a fundamental change in the Nation's labor policies"); see also A. Goldman, Labor and Employment Law in the United States (1996) §§ 79 through 81, pp. 36–37. Further amendments to both acts occurred in subsequent years and all references herein are to the statute currently in effect. See, e.g., Labor-Management Reporting and Disclosure (Landrum-Griffin) Act of 1959, Pub. L. No. 86-257, tit. VII, 73 Stat. 519, 542; Labor Management Cooperation Act of 1978, Pub. L. No. 95-524 § 6 (a), 92 Stat. 2020; Act of 1990, Pub. L. 101-273, 104 Stat. 138.

as hourly employees with Pratt and Whitney Aircraft (Pratt & Whitney), a division of the defendant. During their tenure as employees of the defendant, the plaintiffs had received promotions to salaried, nonunion positions.[2] Between 1991 and 1993, the defendant eliminated many of the salaried positions in conjunction with a company-wide reorganization and reduction in its workforce. As a result, while the plaintiffs maintained their salaried positions, the defendant offered them two options: either (1) accept a demotion to an hourly position within the company and receive, for a fixed period of time, a supplemental wage payment over the maximum wage set forth in the collective bargaining agreement covering those hourly positions; or (2) terminate their employment and, if they were eligible, receive a salaried severance package. Each of the plaintiffs accepted the hourly positions, joined the bargaining unit, and thereafter were subject to the terms of the collective bargaining agreement between the defendant and the union.[3]

In an effort to soften the transition from salaried to hourly positions for the demoted employees, the defendant had maintained a policy of paying such employees a temporary wage supplement in addition to the maximum rate of pay, as defined by the collective bargaining agreement, for the labor grade to which they

[2] The union, the International Association of Machinists and Aerospace Workers, AFL-CIO, is not a party to this action, however, it maintained a collective bargaining agreement with the defendant that expressly excluded salaried and supervisory employees from the bargaining unit.

[3] It is settled that an employer may not condition continued employment on full-blown membership in a union and that an employee may be required to pay fees and dues only for union services, "whittled down to [the] financial core," relating to collective bargaining, contract administration, and grievance adjustment. (Internal quotation marks omitted.) *Marquez* v. *Screen Actors Guild, Inc.*, 525 U.S. 33, 37–38, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998). In this case, the plaintiffs, by accepting the hourly positions, returned to the bargaining unit and reaped the benefits of the collective bargaining agreement and union representation.

had been demoted. The plaintiffs received wage supplements consistent with the defendant's policy. The defendant's policy, which the plaintiffs referred to as the "Step-Down Program," gradually phased out the wage supplement. The payments decreased over time until each plaintiff received the maximum rate for his or her assigned labor grade. The labor grade pay rates and the manner in which the defendant phased out the wage supplement had been drawn directly from the terms of the collective bargaining agreement.[4]

During the course of negotiations in June of 1993,[5] the union challenged the wage supplement practice, contending that the policy favored those union members who had been demoted from salaried positions and paid them more, for the same work, than the rest of the union membership. The union also objected to the practice because, in its view, the wage supplement payments were inconsistent with the maximum wage rates dictated by the terms of the collective bargaining agreement.[6] Thereafter, the defendant agreed to discon-

[4] The specific amount of the initial hourly wage and supplement differed for each of the plaintiffs depending upon his or her previous salary. The total initial rate, including the supplement, was frozen for a period of six months. Thereafter, the wage supplements were reduced by twenty-five cents per hour every sixteen weeks until the maximum hourly wage for that employee's assigned labor grade had been reached.

[5] The collective bargaining agreement in effect between the defendant and the union was set to expire on December 4, 1994. Prior to the negotiations, Pratt & Whitney had experienced significant financial setbacks. Due to a downturn in demand for its aerospace products, Pratt & Whitney had been carrying $500 million in excess inventory, and it sought to cut costs wherever possible. Negotiations with the union ensued because Pratt & Whitney had announced further reductions in its workforce and had considered moving its operations out of Connecticut. As a result of these events and the possibility of plant closings, the union agreed to open negotiations concerning the terms of the existing collective bargaining agreement. The union and the defendant negotiated an agreement to extend the collective bargaining agreement one additional year.

[6] In fact, the union filed a grievance with the defendant on October 4, 1993, contending that the defendant had failed to negotiate in good faith because, during the negotiations, it still was paying the plaintiffs the wage supplements.

tinue the wage supplement policy. The defendant memorialized its agreement with the union in an October 19, 1993 letter, which indicated that all employees demoted from salaried positions to hourly status would "be paid no more than the maximum of the grade to which they are assigned" and that those employees who had been demoted prior to October 22, 1993, would again have the option of receiving a severance package, in the event that they did not choose to continue working as hourly employees. On November 21, 1993, the defendant stopped paying the plaintiffs the wage supplement and reduced the plaintiffs' wages to the maximum rate for the labor grades to which they had been assigned. Additional facts will be provided as necessary.

On May 16, 1994, the plaintiffs initiated the present action alleging breach of contract, promissory estoppel, negligent misrepresentation and violation of General Statutes § 31-71a.[7] The plaintiffs alleged primarily that the wage supplement practice had created individual contracts for payments supplementing the maximum wages under the collective bargaining agreement and that the defendant had breached those individual contracts by discontinuing the phaseout policy. The defendant filed a petition for removal in the United States District Court for the District of Connecticut on June 14, 1994, arguing that the plaintiffs' claims were preempted by § 301 of the Labor Management Relations Act because they fell within the collective bargaining agreement in force between the union and the defendant. The District Court, Nevas, J., adopted the recommendation of the United States Magistrate Judge, Smith, J., concluding that the plaintiffs' claims were not preempted by federal law because they were based on individual contracts entered into before the plaintiffs had accepted the demotions and joined the bargaining

---

[7] General Statutes § 31-71a et seq. govern the payment of wages. The text of these provisions is not relevant to this appeal.

unit. Accordingly, the District Court remanded the case to state court. *Barbieri* v. *United Technologies Corp.*, United States District Court, Docket No. 3:94-0970 (D. Conn. July 24, 1995).

Following the remand, the defendant filed a motion for summary judgment in September, 1995. The defendant pressed its argument that the plaintiffs' state law claims were preempted by § 301 of the Labor Management Relations Act, and argued further that the claims were subject to preemption under the National Labor Relations Act. The trial court, *Holzberg, J.*, denied the defendant's motion on August 14, 1996.

After the parties had conducted discovery, the defendant again moved for summary judgment in 1997. The defendant argued that the alleged contracts to pay the wage supplement had been modified by the union, which became the plaintiffs' authorized representative following their return to the bargaining unit. In essence, the defendant argued that the alleged contracts had been subsumed by the collective bargaining agreement, thus modifying its terms and again raising the specter of preemption under § 301 of the Labor Management Relations Act. The trial court, *Aurigemma, J.*, denied the defendant's motion on October 28, 1998, agreeing with the prior rulings of both Judge Nevas and Judge Holzberg regarding preemption.

Thereafter, on May 6, 1999, the trial court[8] granted the plaintiffs' motion for class certification with respect to their breach of contract and state statutory claims.[9]

---

[8] Unless otherwise indicated, all references hereinafter to the trial court are to Judge Aurigemma.

[9] The trial court certified the class as "[e]mployees affected by Pratt & Whitney's agreement with the [union] in 1993, implemented in November 1993, to cease paying employees who moved from salary to hourly status a wage in excess of the amount provided for that employee's labor grade under the applicable collective bargaining agreement and who were receiving such payments prior to the implementation of such agreement." The class consisted of approximately 177 employees.

A jury trial commenced and at the conclusion of the plaintiffs' case, the defendant moved for a directed verdict based on preemption under both the Labor Management Relations Act and the National Labor Relations Act. The trial court reserved its decision on that motion, allowing the case to proceed. At the conclusion of the trial, the jury returned a verdict for the defendant. Although the jury concluded that (1) a contract to pay the wage supplement had existed between the plaintiffs and the defendant, and (2) the defendant had breached that contract by ceasing the wage supplement phaseout policy in November of 1993, it determined that the defendant had proved its affirmative defense of accord and satisfaction. That defense had been premised on the fact that the plaintiffs, before the defendant eliminated the wage supplement policy, had been offered the same choice that they had been offered when they were first demoted to the hourly positions. That is, the defendant again had given the plaintiffs the option of leaving the company and receiving a severance package before the defendant terminated the wage supplement policy. The jury concluded that, by continuing to work after that option had been presented, the plaintiffs had manifested their consent to be paid in accordance with the wage rates dictated by the collective bargaining agreement, thereby agreeing to forgo the wage supplement phaseout.

Thereafter, the trial court orally denied the plaintiffs' motion to set aside the verdict. The next day, the plaintiffs moved for articulation and, on May 11, 2000, the trial court, contrary to its previous decision and relying on a case cited by the defendant in its motion for a directed verdict, concluded that the plaintiffs' state law claims were preempted by § 301 of the Labor Management Relations Act. Accordingly, the trial court rendered judgment for the defendant. The plaintiffs appealed to the Appellate Court, and we transferred

the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Before this court, the plaintiffs claim that the trial court improperly determined that their claims were preempted by § 301 of the Labor Management Relations Act. The plaintiffs also maintain that the trial court improperly instructed the jury with respect to the defense of accord and satisfaction and that, because of that instruction, a new trial is required.[10]

The defendant asserts that the trial court properly determined that the plaintiffs' state law breach of contract claims are preempted under § 301 of the Labor Management Relations Act. As an alternative ground for affirming the judgment, the defendant argues that the plaintiffs' claims are preempted by the National Labor Relations Act. In addition, the defendant maintains that the trial court's jury instructions with respect to accord and satisfaction were proper. Finally, the defendant contends that the trial court improperly denied its motion to decertify the class and that, in the event that this court remands the case for a new trial, the class should be decertified.

We agree with the plaintiffs that their state law breach of contract claims are not preempted under the Labor Management Relations Act. We conclude further, however, that their claims, which seek to enforce individual contracts for the payment of the wage supplements above the bargained for wage rates in the collective bargaining agreement, are subject to the exclusive jurisdiction of the National Labor Relations Board under

[10] The plaintiffs also contend that the trial court improperly instructed the jury with respect to whether the union, under state law agency principles, had the authority to modify the alleged contracts for the payment of the wage supplement. The defendant argues that the judgment should be affirmed on the alternative ground that the union, as the plaintiffs' authorized agent, lawfully modified the individual contracts. The jury never addressed the issue and neither do we.

*San Diego Building Trades Council* v. *Garmon*, supra, 359 U.S. 245, and its progeny.[11] Accordingly, we do not reach the remaining issues in this appeal.

## I

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . [A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . ." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 791, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

Preemption of state law under the Labor Management Relations Act differs markedly from preemption under the National Labor Relations Act. As discussed more fully herein, the former is a species of the complete preemption doctrine; see id.; and it does not divest state courts of subject matter jurisdiction, but simply

---

[11] "[W]here state law is pre-empted by the [National Labor Relations Act] under *Garmon* . . . the state courts lack the very power to adjudicate the claims that trigger pre-emption." *International Longshoremen's Assn., AFL-CIO* v. *Davis*, 476 U.S. 380, 398–99, 106 S. Ct. 1904, 90 L. Ed. 2d 389 (1986). "[T]he *Garmon* pre-emption doctrine not only mandates the substantive pre-emption by the federal labor law in the areas to which it applies, but also protects the exclusive jurisdiction of the [National Labor Relations] Board over matters arguably within the reach of the [National Labor Relations] Act." *Local 926, International Union of Operating Engineers, AFL-CIO* v. *Jones*, 460 U.S. 669, 680, 103 S. Ct. 1453, 75 L. Ed. 2d 368 (1983).

supplants state substantive law. *Livadas* v. *Bradshaw*, 512 U.S. 107, 122, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994) (noting that § 301 of the Labor Management Relations Act "does not preclude state courts from taking jurisdiction over cases arising from disputes over the interpretation of collective-bargaining agreements, [but] state contract law must yield to the developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions"). "[The Supreme] Court has made clear that § 301 is a potent source of federal labor law, for [although] state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements . . . state courts must apply federal law in deciding those claims . . . and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301 . . . . State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." (Citations omitted.) *United Steelworkers of America, AFL-CIO-CLC* v. *Rawson*, 495 U.S. 362, 368, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990); see also *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *Lucas Flour Co.*, 369 U.S. 95, 103, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962) (noting that § 301 requires that substantive principles of federal labor law take precedence over state law in enforcement of collective bargaining agreements); *Textile Workers Union of America* v. *Lincoln Mills of Alabama*, 353 U.S. 448, 457, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957) (noting that any state law applied that is compatible with federal labor policy will be absorbed as federal law and will not be independent source of private rights).

In contrast, two doctrines exist under the National Labor Relations Act that may lead to preemption. See

*Belknap, Inc.* v. *Hale*, 463 U.S. 491, 498–99, 103 S. Ct. 3172, 77 L. Ed. 2d 798 (1983) (summarizing preemption doctrines under National Labor Relations Act). The first doctrine, emanating from *San Diego Building Trades Council* v. *Garmon*, supra, 359 U.S. 240 (activity clearly or arguably within § 7 or § 8 of the National Labor Relations Act displaces state jurisdiction), precludes both state and federal courts from adjudicating issues that are entrusted to the National Labor Relations Board in the first instance. Preemption under *Garmon* not only preempts state substantive law, but safeguards the exclusive jurisdiction of the National Labor Relations Board over issues arguably within the scope of the National Labor Relations Act. *Local 926, International Union of Operating Engineers, AFL-CIO* v. *Jones*, 460 U.S. 669, 680, 103 S. Ct. 1453, 75 L. Ed. 2d 368 (1983). The National Labor Relations Board retains *exclusive* jurisdiction over activity that may constitute unfair labor practices under 29 U.S.C. § 158. See *International Longshoremen's Assn., AFL-CIO* v. *Davis*, 476 U.S. 380, 393 n.11, 106 S. Ct. 1904, 90 L. Ed. 2d 389 (1986); *Brown* v. *C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999), cert. denied, 529 U.S. 1004, 120 S. Ct. 1268, 146 L. Ed. 2d 218 (2000); accord *Sharkey* v. *Stamford*, 196 Conn. 253, 257, 492 A.2d 171 (1985) (comparing doctrines of primary jurisdiction and exhaustion of remedies); see also *Shea* v. *First Federal Savings & Loan Assn. of New Haven*, 184 Conn. 285, 291 n.6, 439 A.2d 997 (1981) (discussing doctrine of primary jurisdiction).[12]

---

[12] We note that the Labor Management Relations Act and the National Labor Relations Act apply to employers and labor organizations that affect interstate commerce. See generally *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1, 31–32, 57 S. Ct. 615, 81 L. Ed. 893 (1937); *National Labor Relations Board* v. *Reliance Fuel Oil Corp.*, 371 U.S. 224, 225–27, 83 S. Ct. 312, 9 L. Ed. 2d 279 (1963) (per curiam); see also *United Technologies Corp.*, 274 N.L.R.B. 609, 612 (1985) (explaining jurisdiction over United Technologies Corporation and Pratt & Whitney under National Labor Relations Act), enforced, 789 F.2d 121 (2d Cir. 1986); 2 A.B.A., The Developing Labor Law (3d Ed. 1992, P. Hardin et al. eds.) c. 28, p. 1569 (discussing jurisdiction and coverage).

"Based on its constitutional power to regulate inter-state commerce, Congress has created by statute a uniform body of laws governing labor relations and has vested in the National Labor Relations Board the exclusive jurisdiction over administration of those laws. And, although the exclusive nature of this jurisdiction was not explicitly noted by Congress, [the United States Supreme] Court has held that such exclusivity was intended by Congress. Enactment of such exclusive jurisdiction must, by operation of the Supremacy Clause, pre-empt conflicting state-court jurisdiction." *International Longshoremen's Assn., AFL-CIO* v. *Davis*, supra, 476 U.S. 393–94 n.11. "[T]he issue is a choice-of-forum rather than a choice-of-law question." Id., 391.

"A second pre-emption principle, *Machinists* pre-emption, see [*Local 76, International Assn. of Machinists & Aerospace Workers, AFL-CIO* v. *Wisconsin Employment Relations Commission*, 427 U.S. 132, 147, 96 S. Ct. 2548, 49 L. Ed. 2d 396 (1976) (*Machinists*)], prohibits state and municipal regulation of areas that have been left to be controlled by the free play of economic forces. . . . *Machinists* pre-emption preserves Congress' intentional balance between the uncontrolled power of management and labor to further their respective interests." (Citations omitted; internal quotation marks omitted.) *Building & Construction Trades Council of the Metropolitan District* v. *Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 225–26, 113 S. Ct. 1190, 122 L. Ed. 2d 565 (1993); see also *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 749, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (preemption under National Labor Relations Act "protects against state interference with policies implicated by the structure of the Act itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to

be unregulated"); *Belknap, Inc.* v. *Hale,* supra, 463 U.S. 499 (discussing *Machinists* preemption). Thus, under *Machinists,* federal law supplants state law, but federal law may direct that the activity at issue is to be free from any regulation whatsoever. See *Golden State Transit Corp.* v. *Los Angeles,* 475 U.S. 608, 614–15, 106 S. Ct. 1395, 89 L. Ed. 2d 616 (1986) (states are prohibited under *Machinists* "from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts . . . unless such restrictions presumably were contemplated by Congress").

Ordinarily, we would first address the jurisdictional issue, that is, preemption under the National Labor Relations Act, because it implicates this court's power to adjudicate the claims asserted herein. *Federal Deposit Ins. Corp.* v. *Crystal,* 251 Conn. 748, 763, 741 A.2d 956 (1999). Because, however, preemption under the Labor Management Relations Act is intertwined with the National Labor Relations Act issues in this case, we consider the propriety of the trial court's ruling on that matter first. See *Dowling* v. *Slotnik,* supra, 244 Conn. 789 (addressing claim of preemption under federal Immigration Reform and Control Act before jurisdictional claims because issues were "inextricably intertwined").

## II

Whether the trial court properly determined that the plaintiffs' claims were preempted under § 301 of the Labor Management Relations Act is a question of law, which we review under the plenary standard. See *In re David W.,* 254 Conn. 676, 686, 759 A.2d 89 (2000); *Powers* v. *Olson,* 252 Conn. 98, 104–105, 742 A.2d 799 (2000). If the plaintiffs' breach of contract claims are preempted under § 301, then any state law that they seek to invoke as a means of recovery is displaced by federal law. *United Steelworkers of America, AFL-CIO-*

*CLC* v. *Rawson*, supra, 495 U.S. 368. Thus, if federal law controls in the state forum, to succeed, the plaintiffs' claims must be cognizable as federal, rather than state, causes of action. Id.

Section 301 of the Labor Management Relations Act provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185 (a). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." (Internal quotation marks omitted.) *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); see also *Livadas* v. *Bradshaw*, supra, 512 U.S. 122; *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *Lucas Flour Co.*, supra, 369 U.S. 103; *Textile Workers Union of America* v. *Lincoln Mills of Alabama*, supra, 353 U.S. 457.

As a corollary to the "well pleaded complaint" rule,[13] the complete preemption doctrine " 'converts an ordinary state common-law complaint into one stating a

---

[13] The well pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 392. "The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule. [It] provides that federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, see *Louisville & Nashville R.R. Co.* v. *Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43, 53 L. Ed. 126 (1908), and only when [the] plaintiff's well-pleaded complaint raises issues of federal law, see *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S. Ct. 96, 97–98, 81 L. Ed. 70 (1936)." *Marcus* v. *AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

federal claim' " when the federal statute at issue maintains "extraordinary" preemptive force. *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 392–93. Section 301 of the Labor Management Relations Act is such a statute and, because it preempts state law regarding the interpretation of the terms of a collective bargaining agreement, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore [it] arises under federal law." Id.; *Wilhelm* v. *Sunrise Northeast, Inc.*, 923 F. Sup. 330, 335 (D. Conn. 1995).

"[W]hen resolution of a state-law claim is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." (Citation omitted.) *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). "[T]he subject matter of § 301 (a) is peculiarly one that calls for uniform law. . . . Once the collective bargain [is] made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." (Internal quotation marks omitted.) *Lingle* v. *Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404 n.3, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988), quoting *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America* v. *Lucas Flour Co.*, supra, 369 U.S. 103–104.

Under § 301 of the Labor Management Relations Act, federal labor law displaces state law in cases that are substantially dependent upon an analysis of the terms of a labor contract or require an interpretation of such an agreement for their resolution. *Allis-Chalmers Corp.*

v. *Lueck*, supra, 471 U.S. 220; see also *Lingle* v. *Norge Division of Magic Chef, Inc.*, supra, 486 U.S. 413. Not all disputes involving a collective bargaining agreement or provisions thereof, however, are preempted by § 301. *Lingle* v. *Norge Division of Magic Chef, Inc.*, supra, 413 n.12 (noting that state law claims that tangentially involve collective bargaining agreement may survive, but federal law would govern any interpretation of agreement itself). Indeed, individual contracts governing employment may stand as a source of recovery under state law as long as they truly are independent of the collective bargaining agreement. *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396; see also *Livadas* v. *Bradshaw*, supra, 512 U.S. 124 ("the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished"). "[Not] every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the preemptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Allis-Chalmers Corp.* v. *Lueck*, supra, 220.

In *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 388, the United States Supreme Court addressed the precise issue presented in this case: Whether a "state-law complaint for breach of individual employment contracts is completely pre-empted by § 301 of the Labor Management Relations Act . . . ." The plaintiffs in *Caterpillar, Inc.*, were salaried, nonunion employees who allegedly had entered into individual contracts with the defendant for continued employment. Id., 388–89. Thereafter, the defendant downgraded the employees from their nonunion positions to hourly jobs covered by the collective bargaining agreement, assuring the plaintiffs that the downgrades were temporary. Id., 389. After the defen-

dant abruptly fired the plaintiffs, they brought an action in state court seeking damages for breach of contract based on the alleged individual contracts. Id., 390. The defendant sought to remove the case to federal court, contending that the breach of contract claims were essentially claims arising under § 301 of the Labor Management Relations Act. Specifically, it argued that the plaintiffs had accepted positions covered by a collective bargaining agreement and that, consequently, any individual employment contracts had " 'merged into' " and were " 'superseded by' " that agreement. Id.

The court explained that "[t]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." (Internal quotation marks omitted.) Id., 394. The court concluded, however, that "[c]laims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." Id., 396 n.10. Although the plaintiffs in *Caterpillar, Inc.*, had been members of the bargaining unit at the time that they were fired, and they "possessed substantial rights under the collective agreement," the fact that they could have brought an action under § 301 alleging a breach of that agreement did not mean that the alleged individual contract claims were necessarily dependent upon the collective bargaining agreement for resolution. Id., 395; id., 394 ("[s]ection 301 says nothing about the content or validity of individual employment contracts").

In addition, the court in *Caterpillar, Inc.*, rejected the argument that the plaintiffs' individual employment contracts had been subsumed into or eliminated by the collective bargaining agreement. Id., 395–96. "[I]ndivid-

ual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and . . . [such an employee] is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." (Emphasis in original.) Id., 396.

Moreover, the court recognized that enforcement of the individual contracts might implicate preemption under the National Labor Relations Act, but concluded that that issue was "irrelevant" to whether the cause of action pleaded was a removable § 301 claim. Id., 398 n.12. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the [National Labor Relations Act] does not establish that they are removable to federal court" under § 301 of the Labor Management Relations Act. Id., 398.

In the present case, the United States District Court denied the defendant's petition for removal, concluding that "the promise to pay the wage supplement is not founded upon rights created in the bargaining agreement. It is a separate and distinct agreement, and resolution of the plaintiffs' claims will not be preempted by § 301 of the [Labor Management Relations Act]." *Barbieri* v. *United Technologies Corp.*, supra, United States District Court, Docket No. 3:94-0970, citing *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396; see *Varnum* v. *Nu-Car Carriers, Inc.*, 804 F.2d 638 (11th Cir. 1986), cert. denied, 481 U.S. 1049, 107 S. Ct. 2181, 95 L. Ed. 2d 838 (1987) (inducement to accept employment not covered by collective bargaining agreement because it involved employer's conduct prior to employee accepting position).

Following the remand, and after the jury had returned a verdict for the defendant, the trial court nevertheless concluded that the plaintiffs' state law claims were pre-

empted by § 301 of the Labor Management Relations Act. In so ruling, the trial court relied primarily on *Beals* v. *Kiewit Pacific Co.*, 114 F.3d 892, 894 (9th Cir. 1997), cert. denied, 522 U.S. 1108, 118 S. Ct. 1036, 140 L. Ed. 2d 102 (1998) (to extent that independent agreements are inconsistent with terms of collective bargaining agreement, bargaining agreement controls and state law claims are preempted by § 301). See also *Aguilera* v. *Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015–16 (9th Cir. 2000) (independent agreement regarding job security inconsistent with portions of collective bargaining agreement governing layoffs; collective bargaining agreement controls).

In *Beals*, the plaintiff had been induced to accept a union job by the employer's representation in a letter that he would not be discharged for the duration of a specific project. *Beals* v. *Kiewit Pacific Co.*, supra, 114 F.3d 893. The collective bargaining agreement provided that any employee in the bargaining unit could be discharged for "just cause." Id. Before the project had been completed, the employer discharged the plaintiff and the plaintiff brought an action for breach of contract, alleging that the promise to employ him for the duration of the project constituted an individual employment contract. Id., 893–94. The Ninth Circuit Court of Appeals concluded that, because the plaintiff had accepted the union job, and the alleged individual contract was in direct conflict with the terms of the collective bargaining agreement with respect to discharge, the individual contract was subsumed into the collective bargaining agreement and therefore was preempted by § 301 of the Labor Management Relations Act. Id., 894.

In this case, the trial court concluded that the plaintiffs had also accepted union jobs and that, because the wage supplement contracts were "directly inconsistent with the provisions of the collective bargaining

agreement," the plaintiffs' claims were likewise superseded by that agreement. The defendant contends that the trial court properly determined that § 301 of the Labor Management Relations Act preempted the plaintiffs' claims. We disagree.

As the Supreme Court noted in *Caterpillar, Inc.*, "[i]ndividual contracts cannot *subtract* from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the law of contracts applicable, and to the [National Labor Relations] Board if they constitute unfair labor practices." (Emphasis added; internal quotation marks omitted.) *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396, quoting *J.I. Case Co.* v. *National Labor Relations Board*, 321 U.S. 332, 339, 64 S. Ct. 576, 88 L. Ed. 762 (1944); see also *Berda* v. *CBS, Inc.*, 881 F.2d 20, 26 (3d Cir. 1989), cert. denied, 493 U.S. 1062, 110 S. Ct. 879, 107 L. Ed. 2d 962 (1990) (oral agreements giving employees more rights than those in collective bargaining agreement not subsumed by collective agreement such that no state cause of action could be asserted); *Eitmann* v. *New Orleans Public Service, Inc.*, 730 F.2d 359, 362–63 (5th Cir.), cert. denied, 469 U.S. 1018, 105 S. Ct. 433, 83 L. Ed. 2d 359 (1984) (noting that Supreme Court in *J.I. Case Co.* "expressly declined to hold that an individual contract more advantageous than the collective bargaining agreement would be unenforceable"; where employer's preemployment promise conflicts with terms of collective bargaining agreement in effect at time of hiring, § 301 of Labor Management Relations Act preempts state law claim based on preemployment promise). In negotiating an individual contract, an employer "may not incidentally exact or obtain any diminution of his own obligation or any increase of those of employees in the matters covered by the collective agreement." *J.I. Case Co.* v.

*National Labor Relations Board,* supra, 339; see also *Thomas* v. *LTV Corp.,* 39 F.3d 611, 617–18 (5th Cir. 1994) (terms are inconsistent when those in collective bargaining agreement "limit or condition" those in individual contract; individual agreement negotiated by employee, union and employer governing minimum attendance requirements and modifying discharge procedure in collective bargaining agreement preempted).

Although the alleged individual contracts in this case granted the plaintiffs rights beyond those governing wages in the collective bargaining agreement, they did not necessarily limit or condition the terms of employment dictated by the collective bargaining agreement. *Branson* v. *Greyhound Lines, Inc.,* 126 F.3d 747, 755 (5th Cir. 1997), cert. denied, 523 U.S. 1047, 118 S. Ct. 1362, 140 L. Ed. 2d 512 (1998) (where no collective bargaining agreement governed at time parties entered into alleged individual contract, individual claim did not seek to limit or condition collective bargaining agreement); see also *Thomas* v. *LTV Corp.,* supra, 39 F.3d 618; *Eitmann* v. *New Orleans Public Service, Inc.,* supra, 730 F.2d 362–63. The plaintiffs accepted hourly jobs governed by the collective bargaining agreement and agreed to the wages for the labor grade to which they had been assigned. The plaintiffs had the option of terminating their employment and accepting a salaried severance package. The wage supplements, although calculated as additional hourly payments, are alleged to be individual contract rights, offered by the defendant as a matter of practice, based on the plaintiffs' salaried, nonunion status at the time of the demotions. Those supplements neither limited the terms of the collective bargaining agreement, nor did they render any term therein conditional. The payments simply augmented the wages that the plaintiffs received under the collective bargaining agreement for a limited time.

In this case, whether the wage supplement payments are inconsistent with the maximum wage rates defined in the collective bargaining agreement, such that the bargaining agreement would control, is a close question. We recognize that, as a practical matter, once the plaintiffs accepted the hourly positions, they began receiving more money for performing bargaining unit jobs than similarly situated employees that had not been demoted from salaried positions.

The plaintiffs' claims are based on contracts offered to them *before* they accepted the bargaining unit jobs, and the individual contracts were not inconsistent with the collective bargaining agreement because they did not subtract from the terms of the collective bargaining agreement. *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396. Rather, as the plaintiffs alleged in their complaint, the individual contracts granted them rights *in addition* to those that they enjoyed under the collective agreement, and they rely on state law to establish the defendant's liability for breaching those contracts. See id., 395–96.[14]

We conclude that the trial court improperly determined that the plaintiffs' individual contract claims had

---

[14] The fact that the wage supplement policy had been drawn from terms embodied in the collective bargaining agreement that governed demotions within the bargaining unit is of little moment. See *Foy* v. *Pratt & Whitney Group*, 127 F.3d 229, 234 (2d Cir. 1997) (review of terms of collective bargaining agreement to decide preemption question is not "interpretation" warranting preemption; if preemption were warranted on that basis, it would "swallow the rule that employees can assert nonnegotiable state law rights that are independent of their collective bargaining agreements"); *Loewen Group International, Inc.* v. *Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995) (if examining collective bargaining agreement to determine if conflict existed constituted interpretation for preemption purposes, doctrine would "swallow rule that employees . . . are entitled to assert legal rights independent of that rule" [internal quotation marks omitted]); see also *Marion* v. *Virginia Electric & Power Co.*, 52 F.3d 86, 89 (4th Cir. 1995) (contracting parties free to borrow terms from collective bargaining agreement and that fact does not bring alleged individual contract within § 301 of Labor Management Relations Act).

been superseded by the collective bargaining agreement and that they, therefore, were preempted by federal law under § 301 of the Labor Management Relations Act. See 29 U.S.C. § 185 (a). If, indeed, the plaintiffs' claims had been preempted under § 301, their state law claims effectively would have been extinguished by federal law and, in order to maintain this action under federal law, they would have been required to allege in their complaint that the defendant had breached the collective bargaining agreement. See *Livadas* v. *Bradshaw*, supra, 512 U.S. 122 (state court retains jurisdiction over claims alleging breach of collective bargaining agreement under § 301, but state contract law yields to federal law). The core of the plaintiffs' claims, however, is that the defendant breached contracts for the wage supplements that existed *wholly independent* of that agreement. *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396 (plaintiff entitled to assert state law contract rights as long as contract is not collective bargaining agreement). Because the plaintiffs are attempting to assert individual contract rights that do not subtract from the terms of the collective agreement, but merely augment those terms, the individual contracts are not necessarily inconsistent with, nor subsumed by, the collective bargaining agreement. Id.

We are persuaded by the reasoning of the federal District Court in this case and emphasize that "the plaintiffs were not subject to a collective bargaining agreement at the time that the [individual contracts were] entered into." *Barbieri* v. *United Technologies Corp.*, supra, United States District Court, Docket No. 3:94-0970. The individual contracts were not superseded simply because the plaintiffs accepted bargaining unit positions. *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 396–97; see also *Varnum* v. *Nu-Car Carriers, Inc.*, supra, 804 F.2d 641 (complaint focusing on conduct of employer before plaintiff accepted employment not

preempted under § 301). Thus, as the District Court concluded, "the plaintiffs' claims are founded upon rights independent of the bargaining agreement and . . . resolution of these claims will not require analysis of the [collective bargaining] agreement." *Barbieri* v. *United Technologies Corp.*, supra, United States District Court, Docket No. 3:94-0970.

### III

Our conclusion that the trial court improperly determined that the plaintiffs' state law breach of contract claims were preempted by § 301 of the Labor Management Relations Act does not end our preemption inquiry. The defendant asserts, as an alternative ground for affirming the judgment, that the plaintiffs' claims are preempted under the National Labor Relations Act, 29 U.S.C. §§ 151 through 169. The defendant argues that the plaintiffs' claims are preempted under both *Garmon* and *Machinists*, and, therefore, that the plaintiffs cannot prevail on their state law breach of contract claims.

In *Garmon*, the Supreme Court "held that a state court was precluded from awarding damages to employers for economic injuries resulting from peaceful picketing by labor unions that had not been selected by a majority of employees as their bargaining agent." *Building & Construction Trades Council of the Metropolitan District* v. *Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, supra, 507 U.S. 225, citing *San Diego Building Trades Council* v. *Garmon*, supra, 359 U.S. 246. The court in *Garmon* acknowledged that the case "concern[ed] one of the most teasing and frequently litigated areas of industrial relations, the multitude of activities regulated by §§ 7 and 8 of the National Labor Relations Act . . . 29 U.S.C. §§ 157 [and] 158."[15] *San Diego Building Trades Council* v.

---

[15] Section 157 of title 29 of the United States Code provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of

*Garmon*, supra, 241. The touchstone of preemption under this doctrine is the potential for conflict—"potential conflict of rules of law, of remedy, and of administration." Id., 242. "[T]he potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes" is the primary concern when a party in a labor dispute seeks to vindicate rights that implicate the National Labor Relations Board's jurisdiction. Id. Within this "complex and interrelated federal scheme of law," the Supreme Court has concerned itself with "conflict in its broadest sense." Id., 243; *Amalgamated Assn. of Street, Electric Ry. & Motor Coach Employees of America* v. *Lockridge*, 403 U.S. 274, 276, 285–87, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971) (noting that *Garmon* "represents the watershed" regarding federal labor law preemption; discussing conflict rationale).

The court in *Garmon* enunciated two tests for jurisdictional preemption. First, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute unfair labor practice under § 8 [of that act], due regard for the federal enactment requires that state jurisdiction must yield." *San*

collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title."

Section 158 (a) of title 29 of the United States Code delineates activities by employers and labor organizations that constitute unfair labor practices, providing in part that it is an unfair labor practice for an employer "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 . . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . [and] (5) to refuse to bargain collectively with the representatives of his [or her] employees . . . ."

*Diego Building Trades Council* v. *Garmon, supra*, 359
U.S. 244. Second, the court recognized that "[a]t times
it [may not be] clear whether the particular activity
regulated by the States [is] governed by § 7 or § 8, or
[is], perhaps, outside both these sections." Id. In those
instances, "[w]hen an activity is arguably subject to § 7
or § 8 of the [National Labor Relations] Act, the States
as well as the federal courts must defer to the exclusive
competence of the National Labor Relations Board if
the danger of state interference with national policy is
to be averted." Id., 245; *International Longshoremen's
Assn., AFL-CIO* v. *Davis, supra*, 476 U.S. 389–90.

Exceptions to the preemption of state jurisdiction
under this rationale do exist, and a state is not ousted of
the power to adjudicate matters that are of "peripheral
concern" to the federal labor scheme or where the
conduct at issue "touche[s] interests . . . deeply
rooted in local feeling and responsibility." *San Diego
Building Trades Council* v. *Garmon, supra*, 359 U.S.
243–44; see also *Wisconsin Dept. of Industry* v. *Gould,
Inc.*, 475 U.S. 282, 291, 106 S. Ct. 1057, 89 L. Ed. 2d 223
(1986); *International Longshoremen's Assn., AFL-CIO*
v. *Davis, supra*, 476 U.S. 392. In assessing whether to
apply either exception a court must balance "the State's
interest in controlling or remedying the effects of the
conduct . . . against both the interference with the
National Labor Relations Board's ability to adjudicate
controversies committed to it by the Act . . . and the
risk that the State will sanction conduct that the Act
protects." (Citations omitted.) *Belknap, Inc.* v. *Hale,
supra*, 463 U.S. 498–99; see also *Pennsylvania Nurses
Assn.* v. *Pennsylvania State Education Assn.*, 90 F.3d
797, 803 (3d Cir. 1996), cert. denied, 519 U.S. 1110, 117
S. Ct. 947, 136 L. Ed. 2d 835 (1997); *Foreman* v. *AS
Mid-America, Inc.*, 255 Neb. 323, 331–32, 586 N.W.2d
290 (1998), cert. denied, 526 U.S. 1017, 119 S. Ct. 1250,
143 L. Ed. 2d 347 (1999).

In the present case, the defendant claims that the alleged contracts concern wages, which is a mandatory subject of collective bargaining, and bargaining unit positions. Because the defendant failed to negotiate with the union as the exclusive representative of bargaining unit employees prior to initiating the alleged contracts for the wage supplements, the defendant contends that the activity is clearly prohibited by the National Labor Relations Act.

We agree with the general proposition, offered by the defendant and conceded by the plaintiffs, that an employer who bypasses a union and deals directly with employees in a bargaining unit violates the National Labor Relations Act. See *Medo Photo Supply Corp.* v. *National Labor Relations Board*, 321 U.S. 678, 684, 64 S. Ct. 830, 88 L. Ed. 1007 (1944) (noting that it is "a violation of the essential principle of collective bargaining and an infringement of the [National Labor Relations] Act for the employer to disregard the bargaining representative by negotiating with individual employees"); *Caldwell* v. *American Basketball Assn., Inc.*, 66 F.3d 523, 528 (2d Cir. 1995), cert. denied, 518 U.S. 1033, 116 S. Ct. 2579, 135 L. Ed. 2d 1094 (1996) ("[o]nce a union has been selected as a collective bargaining representative, the [National Labor Relations Act] extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interest of all employees" [internal quotation marks omitted]); *National Labor Relations Board* v. *Pratt & Whitney Aircraft Division*, 789 F.2d 121, 134 (2d Cir. 1986) (noting that efforts to bypass union are considered direct dealing in violation of National Labor Relations Act § 158 [a] [5]); *Wonder State Mfg. Co.*, 151 N.L.R.B. 904, 914 (1965) (direct dealing is unfair labor practice). We also recognize that an employer violates its duty to bargain collectively when it unilaterally changes terms

and conditions of employment without first bargaining with the exclusive collective bargaining representative of its employees. See *Litton Financial Printing Division* v. *National Labor Relations Board*, 501 U.S. 190, 198–99, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991); *National Labor Relations Board* v. *Katz*, 369 U.S. 736, 743, 82 S. Ct. 1107, 8 L. Ed. 2d 230 (1962). Similarly, the National Labor Relations Board clearly has determined that implementing unilateral changes in the wages, hours, and other terms and conditions of employment for bargaining unit employees, while a valid collective bargaining agreement is in effect, amounts to an unfair labor practice. See, e.g., *Frontier Hotel & Casino*, 318 N.L.R.B. 857, 878 (1995), enforced in part sub nom. *Unbelievable, Inc.* v. *National Labor Relations Board*, 118 F.3d 795 (D.C. Cir. 1997).

Under the factual scenario in this case, however, these general propositions fail to demonstrate sufficiently that the defendant *clearly* has violated the National Labor Relations Act. It is an undisputed fact that, at the time that the plaintiffs were notified of their options regarding demotion and the wage supplement or termination, they had not yet accepted the offered positions in the bargaining unit. Nor do the previously set forth principles lead us to conclude that it is clear or it fairly may be assumed that enforcing the individual contracts, which allegedly had been entered into before the plaintiffs accepted the bargaining unit positions and which granted them greater rights than those in the collective bargaining agreement, under state contract law would constitute an unfair labor practice or otherwise violate the National Labor Relations Act. *San Diego Building Trades Council* v. *Garmon*, supra, 359 U.S. 244.

We do conclude, however, that the defendant's arguments proffered to advance a clear violation of the National Labor Relations Act apply with equal force

to an *arguable* violation thereof. As noted previously, *Garmon* and its progeny instruct that state jurisdiction must yield to that of the National Labor Relations Board "[w]hen an activity is arguably subject to § 7 or § 8" of the National Labor Relations Act. Id., 245; *Breininger* v. *Sheet Metal Workers*, 493 U.S. 67, 74, 110 S. Ct. 424, 107 L. Ed. 2d 388 (1989); *Local 926, International Union of Operating Engineers, AFL-CIO* v. *Jones*, supra, 460 U.S. 676. "[A] party asserting pre-emption must advance an interpretation of the [National Labor Relations] Act that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the [National Labor Relations] Board. . . . The party must then put forth enough evidence to enable the court to find that the [National Labor Relations] Board reasonably could uphold a claim based on such an interpretation." (Citation omitted; internal quotation marks omitted.) *International Longshoremen's Assn., AFL-CIO* v. *Davis*, supra, 476 U.S. 395. "The critical inquiry [is] . . . whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the [National] Labor [Relations] Board." *Sears, Roebuck & Co.* v. *San Diego County District Council of Carpenters*, 436 U.S. 180, 197, 98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978).

In the present case, the trial court, *Holzberg, J.*, addressed this issue in denying the defendant's first motion for summary judgment. Although Judge Holzberg recognized that the controversies presented to the state court and the National Labor Relations Board must be identical, he required the defendant to "demonstrate that the *claims* . . . are the same as [those that] could be presented to the [National Labor Relations Board]." (Emphasis added.) Judge Holzberg characterized the claim that could be presented to the National Labor Relations Board as "whether it was an unfair labor

practice for the defendant to bargain directly with the plaintiffs at the time they were still salaried employees," while framing the issue in state court as "not whether the defendant's actions constitute an unfair labor practice, but whether: (1) the defendant agreed to pay a wage supplement; (2) whether such [an] agreement is enforceable; and (3) whether the defendant has breached that agreement."

Likewise, the plaintiffs argue that, in order to invoke *Garmon* preemption, the claims presented in each forum must be identical. They contend that "[t]here is no possible interpretation of the [National Labor Relations Act that] would allow [the] defendant to demonstrate that [the] plaintiffs' claims for breach of contract are identical to claims that could be brought before the [National Labor Relations Board]." We disagree.

It is the controversy at issue, and the activity that a state seeks to regulate—in this case through a judicial decision based on state contract law—not the specificity of the claim, that is at the crux of the "arguably" protected or prohibited prong of *Garmon*. *Local 926, International Union of Operating Engineers, AFL-CIO v. Jones*, supra, 460 U.S. 676. Although an "arguable federal violation and the state [claim may arise] in the same factual setting, [if] the respective controversies presented to the state and federal forums would not have been the same," then a state retains jurisdiction. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, supra, 436 U.S. 196–97 (trespass claim under state law arising from union picketing that arguably violated federal labor law "create[d] no realistic risk of interference with the [National] Labor [Relations] Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices").

In *Local 926, International Union of Operating Engineers, AFL-CIO v. Jones*, supra, 460 U.S. 682, the

Supreme Court, in addressing preemption of a state action brought by a discharged supervisor against a union for interference with his individual contract of employment distinguished *Sears, Roebuck & Co.* The court acknowledged that its "approach to the pre-emption issue [had] been stated and restated"; id., 676; and reiterated that "the *Garmon* pre-emption doctrine not only mandates the substantive pre-emption by the federal labor law in the areas to which it applies, but also protects the exclusive jurisdiction of the [National Labor Relations] Board over matters arguably within the reach of the [National Labor Relations] Act." Id., 680.

In *Local 926, International Union of Operating Engineers, AFL-CIO*, the plaintiff claimed that his state court action against the union and any potential unfair labor practice charge arising from the union's conduct were not "sufficiently alike" to warrant preemption. Id., 681. The plaintiff conceded that, if the union's interference with his contract for employment had coerced the employer into discharging him, it would have been an unfair labor practice under the National Labor Relations Act, 29 U.S.C. § 158 (b) (1) (B). Id. The plaintiff argued, however, that, had the union's conduct amounted to noncoercive interference, it would not have implicated that act, and his state law claim could have continued. Id.

In rejecting that argument, the court recognized that "a fundamental part" of a state law claim for noncoercive interference would have been that the union actually had caused the employer to discharge the plaintiff. Id., 682. That "same crucial element" also would have been necessary for an unfair labor practice charge. Id. Thus, because "the federal and state claims [would have been] the same in a fundamental respect . . . [t]he risk of interference with the [National Labor Relations] Board's jurisdiction [was] obvious and substantial." Id., 682–83. Further, the court rejected the contention that

the issues raised in state court satisfied the exceptions to avoid preemptions because they were of "peripheral concern to the federal labor policy" or because those claims were "deeply rooted in local law . . . ." Id., 683; see also *International Longshoremen's Assn., AFL-CIO* v. *Davis*, supra, 476 U.S. 392; *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States & Canada, Local No. 57* v. *Bechtel Power Corp.*, 834 F.2d 884, 887 (10th Cir. 1987), cert. denied, 486 U.S. 1055, 108 S. Ct. 2822, 100 L. Ed. 2d 923 (1988).

In the present case, although it is true that the plaintiffs could not have brought a breach of contract claim against the defendant before the National Labor Relations Board, it is the *enforceability* of the alleged individual contracts that is the "same crucial element" that guides our decision. *Local 926, International Union of Operating Engineers, AFL-CIO* v. *Jones*, supra, 460 U.S. 682. The trial court acknowledged that it would be required to pass on the question of enforceability as a matter of state law. We believe that, if we were to enforce the alleged contracts herein, by imposing liability on the defendant for breaching those contracts, we would run the risk of placing our imprimatur on conduct that, at least *arguably*, violates §§ 7 or 8 of the National Labor Relations Act. Even if we assume that negotiating the alleged contracts for the wage supplements in this case did not amount to direct dealing, enforcing the terms of the contracts through an award of damages would condone conduct that may otherwise be contrary to federal labor policy.

The potential for conflict and state interference with federal labor law in this case is "obvious and substantial." Id., 683. We risk validating an agreement to pay future bargaining unit employees an hourly supplement above the wage rates dictated by the collective bargaining agreement when that very agreement arguably

circumvented the entire collective bargaining process. It is conceivable that the National Labor Relations Board could conclude that such a scheme is contrary to federal law. See *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 397–98 (noting that "if an employer wishes to dispute the continued legality or viability of a pre-existing individual employment contract because an employee has taken a position covered by a collective bargaining agreement, it may raise this question in state court . . . [and argue] that enforcement of the individual employment contract arguably would constitute an unfair labor practice" preempted under *Garmon*); *Loewen Group International, Inc.* v. *Haberichter*, 65 F.3d 1417, 1426 (7th Cir. 1995) (as long as employer is not attempting to circumvent union or undermine collective bargaining agreement, more favorable contracts with individual employees may be negotiated); *Mechanical Contractors Assn.* v. *Greater Bay Area Assn.*, 66 Cal. App. 4th 672, 689–90, 78 Cal. Rptr. 2d 225 (1998), cert. denied, 526 U.S. 1114, 119 S. Ct. 1759, 143 L. Ed. 2d 791 (1999) (refusing to address validity of contract as matter of state law because National Labor Relations Board had exclusive jurisdiction as to question of whether contract violated collective bargaining process itself); *Young* v. *Caterpillar, Inc.*, 258 Ill. App. 3d 792, 797, 629 N.E.2d 830 (1994) (claims asserted in state court were "in essence unfair labor practices claims"; whether unfair labor practice has occurred falls within exclusive jurisdiction of National Labor Relations Board).[16]

---

[16] We recognize that the issue of the enforceability of the individual contracts could be presented to the National Labor Relations Board in a number of ways. In fact, two of the members of the plaintiffs' class filed charges with the National Labor Relations Board against the *union* for allegedly violating the National Labor Relations Act by negotiating the elimination of the wage supplement program. The record before us does not contain any information concerning the outcome or resolution of those charges.

The plaintiffs claim further, however, that they may avoid preemption under *Garmon* because "the state's interest in protecting the sanctity of contracting, and the attendant remedies for breach of contract" satisfies the exception concerning "interests deeply rooted in local feeling and responsibility." *Belknap, Inc.* v. *Hale,* supra, 463 U.S.. 488. The plaintiffs rely primarily upon *Belknap, Inc.*, contending that that interest is "precisely the interest that the Supreme Court . . . held to be sufficiently important to trump *Garmon* preemption." See id., 511. We find *Belknap, Inc.*, to be inapposite.

In that case, the court addressed the issue of "whether the National Labor Relations Act . . . pre-empts a misrepresentation and breach-of-contract action against [an] employer brought in state court by strike replacements who were displaced by reinstated strikers after having been offered and [having] accepted jobs on a permanent basis and assured they would not be fired to accommodate returning strikers." Id., 493. The court concluded that the state law claims were not preempted under *Garmon.* Id., 512. With respect to the misrepresentation claim, the court concluded that it was "of no more than peripheral concern to the [National Labor Relations] Board and the federal law"; id., 511; because the state court action "could not fairly be called identical" to any unfair labor practice charge that could have been brought before the National Labor Relations Board. Id., 510.

The court also determined that the breach of contract claim was not preempted under *Garmon* because the federal interests, "on the one hand, and the interest of the State in providing a remedy to its citizens for breach of contract, on the other, are discrete concerns . . . ." (Citation omitted; internal quotation marks omitted.) Id., 512. The court reasoned that, even if the National Labor Relations Board had ordered the reinstatement of the striking workers, it merely would have precluded

the replacement workers, who had been laid off, from seeking specific enforcement of the alleged contracts for permanent employment. Id. The court saw "no basis for holding that permitting the contract cause of action [would] conflict with the rights of either the strikers or the employer or would frustrate any policy of the federal labor laws." Id.

In the present case, the plaintiffs emphasize that they are not seeking specific performance of the alleged contracts for the wage supplement, but that they, like the replacement workers in *Belknap, Inc.*, are simply seeking damages for breach of individual contracts that implicate neither federal labor law nor policy. See *White v. National Steel Corp.*, 938 F.2d 474, 485 (4th Cir.), cert. denied, 502 U.S. 974, 112 S. Ct. 454, 116 L. Ed. 2d 471 (1991) ("[e]mployees who have made valid individual contracts that conflict with subsequent federal labor agreements, and thus cannot be specifically enforced, are still free to bring damages claims against their employer for breach of contract"). We disagree.

Unlike the replacement workers in *Belknap, Inc.*, the plaintiffs herein, in order to receive the benefit of the wage supplement program, agreed to accept positions in the bargaining unit. They continued to work for the defendant in those positions, reaping the benefit of the collective bargaining agreement, as well as the supplemental wage program, when the defendant and the union had agreed to discontinue the program. The breach of contract action in this case is not peculiarly local, but, rather, because the plaintiffs agreed to return to the bargaining unit, it implicates the "comprehensive amalgam of substantive law and regulatory arrangements that Congress set up in the [National Labor Relations Act] to govern labor-management relations affecting interstate commerce." *Local 926, International Union of Operating Engineers, AFL-CIO v. Jones*, supra, 460 U.S. 675–76. The remedy that the

plaintiffs seek in this case, damages as opposed to specific performance, is predicated on an enforcement of the alleged contracts, wherein lies the potential for conflict with federal law. See *J.A. Croson Co.* v. *J.A. Guy, Inc.*, 81 Ohio St. 3d 346, 353, 691 N.E.2d 655, cert. denied, 525 U.S. 871, 119 S. Ct. 169, 142 L. Ed. 2d 138 (1998) (noting that range and nature of remedies that are and are not available is fundamental part of comprehensive federal labor system; state wage statutes preempted by National Labor Relations Act to extent that they restrain federally protected conduct under act); cf. *Pennsylvania Nurses Assn.* v. *Pennsylvania State Education Assn.*, supra, 90 F.3d 803 (noting that "[t]he Supreme Court has ordinarily applied [the local interests] exception in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property," as well as trespass and certain personal torts).

As noted previously, even if we were to agree with the plaintiffs that Connecticut's interest in providing a remedy for breach of contract is sufficiently weighty to qualify for the exception to *Garmon* preemption, we would still be required to balance "the State's interest in controlling or remedying the effects of the conduct . . . against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the [National Labor Relations] Act . . . and the risk that the State will sanction conduct that the Act protects." (Citations omitted.) *Belknap, Inc.* v. *Hale*, supra, 463 U.S. 498–99; see also *Pennsylvania Nurses Assn.* v. *Pennsylvania State Education Assn.*, supra, 90 F.3d 801. We already have concluded in this case that there is a palpable risk that the state may enforce contracts under state law that the National Labor Relations Board could deem contrary

to federal labor policy. Cf. *Mechanical Contractors Assn.* v. *Greater Bay Assn.*, supra, 66 Cal. App. 4th 689–90 (noting that when dispute centers on whether challenged conduct violated collective bargaining process itself, exceptions to preemption do not apply).

Whether an employer may negotiate a contract to pay employees who agree to return to the bargaining unit a supplemental hourly wage in addition to the maximum rates dictated by the collective bargaining agreement, and more importantly, whether a bargaining unit employee may enforce such a contract as a matter of federal labor law and policy, are matters that are best left to the federal agency charged with administering the National Labor Relations Act. "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." (Internal quotation marks omitted.) *International Longshoremen's Assn., AFL-CIO* v. *Davis*, supra, 476 U.S. 389, quoting *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union 776*, 346 U.S. 485, 490–91, 74 S. Ct. 161, 98 L. Ed. 228 (1953).

We conclude that the issue of the enforceability of the alleged individual contracts in this case is neither of "peripheral concern" to federal labor law, nor does it touch "interests so deeply rooted in local feeling and responsibility" to avoid the broad preemptive scope of the National Labor Relations Act under *Garmon*. (Internal quotation marks omitted.) *International Longshoremen's Assn., AFL-CIO* v. *Davis*, supra, 476 U.S. 392, quoting *San Diego Building Trades Council*

v. *Garmon*, supra, 359 U.S. 243–44.[17] Accordingly, the plaintiffs' claims are preempted under *Garmon*, and the trial court was without jurisdiction to proceed. See *Caldwell* v. *American Basketball Assn., Inc.*, supra, 66 F.3d 527 (dismissing state law claims that arguably constituted unfair labor practice because deciding those claims would have required determination of whether state law relied upon was consistent with substantive provisions of federal law and fashioning of remedy, both of which are exclusive responsibilities of National Labor Relations Board).

The judgment of the trial court is vacated and the case is remanded with direction to dismiss the plaintiffs' action.

In this opinion the other justices concurred.

---

[17] We need not address whether the plaintiffs' claims are also preempted by the National Labor Relations Act under *Local 76, International Assn. of Machinists & Aerospace Workers, AFL-CIO* v. *Wisconsin Employment Relations Commission*, supra, 427 U.S. 146 (state law that upsets balance of power between labor and management preempted). See *Caterpillar, Inc.* v. *Williams*, supra, 482 U.S. 397 (employer may argue that individual employment contract not subject to preemption under § 301 of the Labor Management Relations Act is preempted under *Machinists* due to principle of exclusive representation in 29 U.S.C. § 159 [a]). Nor do we address any of the remaining claims in this case.

